[S. F. No. 20333. In Bank. Dec. 14, 1959.]

CITY AND COUNTY OF SAN FRANCISCO et al., Petitioners, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents; FRANK HINMAN, JR., et al., Real Parties in Interest.

238

Dion R. Holm, City Attorney, George E. Baglin, Deputy City Attorney, and Raymond H. Shone for Petitioners.

Jay Jackson, Harold C. Brown and Morgan J. Doyle as Amici Curiae on behalf of Petitioners.

Casper W. Weinberger, Alvin H. Baum, Jr., and Heller, Ehrman, White & McAuliffe for Respondents and Real Parties in Interest.

SCHAUER, J.—The city and county of San Francisco and Donald S. Kavanagh, a property owner therein, seek prohibition to restrain the San Francisco Superior Court and the Honorable Orla St. Clair, judge thereof, from further proceedings in an action entitled *Hinman* v. *Board of Permit Appeals*, No. 489702. In that action the superior court has entered its minute order that a writ of mandate issue and proposes to file a formal written order that its clerk "shall issue the peremptory writ of mandate commanding defendants individually and as members of the Board of Permit Appeals to set aside their order of April 29, 1959 overruling the order of the City Planning Commission of March 14, 1959 which said order of the said Board of Permit Appeals orders a permit to be granted to defendant . . . Kavanagh to erect an apartment house building . . ."

There is no conflict of evidence. The superior court heard no evidence whatsoever. The sole ultimate question is whether the superior court's order is an act "in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari*." (*Abelleira* v. *District Court of Appeal* (1941), 17 Cal.2d 280, 291 [4] [109 P.2d 942, 132 A.L.R. 715].) We have concluded that under the pertinent statutes of this state, applicable charter provisions and ordinances of the city and county of San Francisco, and established decisional law, the superior court exceeded and proposes to exceed its jurisdiction and that petitioners are entitled to the relief sought.

This controversy arises out of the application of plaintiff Kavanagh for a building permit to construct an apartment house on his property at Leavenworth and Bay Streets in San Francisco. Under the city ordinances, including the current city planning code, no such building may be erected without first securing a permit from the central permit bureau. That bureau is authorized to issue a permit only after prior approval of the application by such city departments or agencies, including the planning commission, as may have jurisdiction in the premises. Some time prior to March 5, 1959, Kavanagh duly applied for an appropriate permit. The proposed building, under the plans as amended, would comply with all presently effective and relevant city ordinances, but by a vote of four to two the planning commission denied the application.[1] From such denial Kavanagh ap-

---

[1]Two of the members who voted to deny explained that they so voted because in their view the subject proposed development would not in some respects comply with "the new Zoning Ordinance." That this view was the basis of the commission's action is established by the pleadings. Such "new Zoning Ordinance" is Ordinance 492-58, passed on September 8, 1959, and expressly made inoperative and ineffective (§ 215) until 180 days after the adoption by the board of supervisors of a new zoning map. Such a new map was adopted by the board of supervisors on November 2, 1959 (after the commencement of this litigation and more than six months after the board's order reversing the denial of Kavanagh's application); and the new zoning ordinance will therefore remain inoperative until May, 1960, which will be more than one year after the board's order was made.

By way of information. under the new ordinance the area in question will be zone R-3, a classification which imposes a 40 foot height limit and would allow only 46 dwelling units on Kavanagh's proposed site. Kavanagh's proposed building is 23 stories high, and would contain 204 dwelling units and represent a total investment of some $3,500,000.00.

Section 1 of the new ordinance declares that it "is adopted to promote . . . public health, safety . . . and general welfare . . . [and] To guide, control and regulate *future* growth and development . . ." (italics added) and section 50 specifies that "(c) Any building for which a

pealed to the board of permit appeals, which after hearing, as hereinafter related in more detail, overruled the planning commission's order of denial. It is this order of the board of permit appeals which the superior court, in the action brought by Hinman and others, is about to require the appeals board to vacate.

Hinman and the other plaintiffs in the superior court action, real parties in interest here, own property in the vicinity of Bay and Leavenworth. Their complaint alleges largely conclusions of law: Their property will be irreparably damaged and the general public interest will be adversely affected by the board's approval of Kavanagh's application; the planning commission refused such application because the density and height of the proposed apartment house would exceed those permitted by city ordinance 492-58[1] (which, as above noted, will not become effective until May, 1960), and therefore would be contrary to public welfare; Kavanagh appealed to the board of permit appeals; the board, without making written findings,[2] overruled the commission. The complaint continues: The board "acted arbitrarily, unreasonably, and capriciously"; its action "was not guided by any standards, since neither Section 24, Section 39, nor any other section of the Charter of the City . . . nor any section of the Municipal Code . . . establish any standards for the exercise of the Board's power to overrule the City Planning Commission's denial of the building permit." The complaint prayed for an order to show cause, restraining order, and injunction pendente lite restraining the board of permit appeals from processing Kavanagh's application and restraining Kavanagh from performing any acts under any building permit issued upon such application; it also prayed for an alternative writ of mandate commanding the board to set aside its decision.

Concurrently with the filing of their complaint Hinman *et al.* obtained ex parte an order to show cause and temporary restraining order as prayed. The temporary restraining order is still in effect.

---

*(Footnote 1 continued)*
permit has been lawfully granted at the *effective date* of this ordinance . . . may be completed in accordance with the approved plans; provided, that construction is started within three (3) months and diligently prosecuted . . ." (Italics added.)

[1]See footnote 1, *supra*, p. 240.

[2]Neither the San Francisco charter nor related sections of the municipal code governing permit procedure provide for the making of any findings of fact by the central permit bureau on original applications or by the board of permit appeals.

242

The board of permit appeals and Kavanagh filed a general demurrer, answer, and return to the order to show cause. By such return and answer they denied the allegations of injury to plaintiffs or the public and of arbitrariness on the part of the board, and alleged that ordinance 492-58 gave the planning commission no authority to accelerate its operative date, that no stenographic record of the hearing before the board was made (none was presented to the trial court) and that Hinman *et al.* (on whom the burden rested in the superior court action) did not demand such a record as provided by section 11, part III, of the Municipal Code,[3] and alleged further, that the board of permit appeals held a full and fair hearing on Kavanagh's appeal, heard all interested parties, and personally viewed the involved area of San Francisco. Attached to the board's answer and return were five exhibits, the authenticity of which is not disputed. Such exhibits are: memorandum of department of city planning to board of permit appeals summarizing the proceedings before the planning commission on Kavanagh's application; minutes of board of permit appeals in Kavanagh's appeal; written opinion of a member of the board explaining his vote to overrule the planning commission; Kavanagh's application for permit; the board's decision and order on Kavanagh's appeal.

The superior court heard legal arguments on the application of Hinman *et al.* for preliminary injunction, on the demurrer, and on the questions of the need for a transcript of the evidence before the board and for written findings. No oral evidence was taken, there was no factual conflict as to the exhibits, and the matter was determined solely on issues of law from inspection of the pleadings, including, of course, the attached exhibits. On August 27, 1959, the court made the minute order that a writ of mandate should issue. Proposed forms of order directing issuance of the writ[4] and of peremp-

---

[3]Section 11, part III, reads: ''Phonographic Reporter—Fees. The Board of Permit Appeals may designate a competent phonographic reporter . . . the reporter shall attend at the request of the Board and shall take down and transcribe all proceedings *at the request of and expense of the party demanding a record thereof.* The Board may, upon its own motion, order a phonographic report of any proceeding.'' (Italics added.)

[4]The proposed order recites that the court ''finds'' that the action of the board of permit appeals ''was unguided by any standards, statutory or otherwise, and that its action in so overruling the City Planning Commission . . . was arbitrary and capricious and an abuse of the discretion granted to it.''

Whether or not the relevant ordinances enunciating the applicable

tory writ of mandate were prepared and served by counsel for Hinman *et al.*, but have not been signed by the lower court, pending disposition of this prohibition proceeding. As stated above, the city, the board, and Kavanagh then began this proceeding.

The writ of prohibition is an appropriate remedy to arrest the proceedings of a court when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court are without or in excess of its jurisdiction as that term is used in relation to prohibition. (See Code Civ. Proc., §§ 1102, 1103.) The absence of another adequate remedy was determined by this court when we granted an alternative writ. (*City of Los Angeles* v. *Superior Court* (1959), 51 Cal.2d 423, 429 [1] [333 P.2d 745].)

Hinman *et al.* urge, however, that prohibition will not lie here because the action taken or about to be taken by the court below, even though determined to be incorrect, is at most erroneous and not without or in excess of that court's jurisdiction. But in prohibition matters, as enunciated in *Abelleira* v. *District Court of Appeal* (1941), *supra*, 17 Cal.2d 280, 288, 291 [3, 4], the phrase "lack of jurisdiction" may [3] "be applied to a case where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. . . . [P. 291] [4] Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provisions, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction, in so far as that term is used to indicate that those acts may be restrained by prohibition or annulled on *certiorari.*" In *Rodman* v. *Superior Court* (1939), 13 Cal. 2d 262, 269-270 [89 P.2d 109], quoting from *Spreckels Sugar*

*(Footnote 4 continued)*
standards were exhibits before the trial court does not appear. Because the charter provisions are found in the official statutes (Stats. 1931, pp. 2991-2992, 3001-3002), they were presumably considered by that court. Such ordinances were, of course, before the planning commission and the board of permit appeals and are before this court by judicial notice. (*Greif* v. *Dullea* (1944), 66 Cal.App.2d 986, 998 [10, 11] [153 P.2d 581]; *Ward Mfg. Co.* v. *Miley* (1955), 131 Cal.App.2d 603, 609 [10] [281 P.2d 343]; *People* v. *Crittenden* (1949), 93 Cal.App.2d Supp. 871, 877 [5] [209 P.2d 161].) In any event the burden was upon the Hinman plaintiffs to prove in the superior court that there were no such standards. Manifestly this they could not and did not do.

**244**

*Co.* v. *Industrial Acc. Com.,* (1921), 186 Cal. 256, 260 [199 P.8], it is stated that the word "jurisdiction," is [6] "frequently used as meaning authority to do the particular thing done, or, putting it conversely, a want of jurisdiction frequently means a want of authority to exercise in a particular manner a power which the board or tribunal has, the doing of something in excess of the authority possessed." In another case the rule is thus stated: "Where a court has no jurisdiction to act except in a particular manner, it may be restrained by prohibition from acting in a different, unauthorized manner." (*Lawson* v. *Superior Court* (1957), 155 Cal.App.2d 755, 760 [6] [318 P.2d 812].) And in another enunciation of the rule this court said: "Any acts which exceed the power of a court, whether defined by statute or by rules developed and followed under the doctrine of *stare decisis,* may be restrained by prohibition." (*Tidewater Assoc. Oil Co.* v. *Superior Court* (1955), 43 Cal.2d 815, 821 [6] [279 P.2d 35].)

As already stated, the peremptory writ of mandate which the lower court proposes to issue would command the board of permit appeals to set aside its order overruling the planning commission. ▊ Section 1085 of the Code of Civil Procedure provides that the writ of mandate "may be issued . . . to any . . . board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . ." It will not lie to control discretion within the area lawfully entrusted to an administrative board. (*Faulkner* v. *California Toll Bridge Authority* (1953), 40 Cal.2d 317, 326 [3] [253 P.2d 659]; *Lindell Co.* v. *Board of Permit Appeals* (1943), 23 Cal.2d 303, 315 [6] 323-324 [19] [144 P.2d 4].) ▊ If the action of the board of permit appeals in overruling the planning commission in the present case was within its lawful discretion, it follows that the superior court was about to act in excess of its authority and hence beyond its jurisdiction in attempting to control such action by mandate, and that prohibition will lie to test the matter. As shown hereinabove, the propriety of the trial court's action turns upon matters of law, rather than upon any substantial question of fact upon a material issue. ▊ Moreover, although "the remedy by writ of prohibition is a preventive, rather than a corrective remedy [citations] . . . 'the operation of the writ of prohibition is excluded only in cases when the action of the inferior tribunal is completed, and nothing remains to be done in pursuance of its void order. If its action is not completed and ended, its

further proceedings may be stayed, and if it is necessary for the purpose of affording complete and adequate relief, what has been done will be undone.' [Citations.]'' (*Evans* v. *Superior Court* (1939), 14 Cal.2d 563, 580 [11] [96 P.2d 107].) Consequently the fact that the superior court has issued a temporary restraining order and has made its minute order that mandate issue (although its peremptory writ has not issued) certainly does not exclude prohibition here.

As established by the pleadings, the planning commission denied Kavanagh's application for a building permit, on the ground that the density and height of his proposed apartment house would be ''too high'' because they would exceed those permitted in the new zoning ordinance which will not become effective until May of 1960 (and which had no ascertainable effective date at the time of the commission's action[5]), and that the building would therefore ''be contrary to the welfare of the city.''

The administrative plan for the government of the city and county of San Francisco, insofar as material here, includes the setting up of a comprehensive system of express standards regulating the use of land and the construction of buildings thereon. To administer the regulations imposing such standards the charter directly and through implementing ordinances creates a central permit bureau.[6] One of the

---

[5]Nor, for that matter, at the time the board of permit appeals acted or when the superior court entered its minute order.

[6]Sections 301, 302 and 304 of the San Francisco Building Code provide:
''SEC. 301. *Permit Before Erection*. It shall be unlawful for any person . . . to commence the construction . . . of any structure . . . without first obtaining a building permit therefor from the Central Permit Bureau, approved by the Superintendent [of the Bureau of Building Inspection, Department of Public Works, City and County of San Francisco] . . .
''SEC. 302. *Application for Permit*. Any person desiring a building permit, as required by this Code, shall file with the Central Permit Bureau an application therefor in writing on blank forms to be furnished for that purpose . . . Two (2) complete sets of specifications and reproduced plans . . . shall accompany every application for a permit. . . .
''SEC. 304. *Issuance of Permits*. The applications, plans and specifications shall be received by the Central Permit Bureau and referred, for such approvals as are within their respective jurisdictions, to the Department of City Planning, the Bureau of Building Inspection, the Bureau of Fire Prevention and Public Safety, the Bureau of Engineering and other interested departments and bureaus. If approved, each approval shall be endorsed in writing on the applications by the interested departments or bureaus. When such plans and specifications are found to be in conformity with the requirements of this Code and all other laws and ordinances applicable thereto, and are approved by the Superintendent, the Central Permit Bureau shall issue a permit for the specified construction upon receipt of the required permit fees,''

agencies functioning with or as a part of that bureau is the planning commission; another is the board of permit appeals. There is not a scintilla of support for the assertion of the Hinman group that the standards for the board of permit appeals are any different from or less than those guiding the other agencies whose acts may be reviewed. The only substantial difference between the planning commission and the board (and that is wholly immaterial in resolving any issue here) is that the planning commission is but one of several primary agencies, such as the bureau of building inspection, the bureau of fire prevention and public safety, the bureau of engineering, etc., charged at the inception or primary level with the administration and enforcement of the prescribed standards while the board is given appellate jurisdiction over such primary agencies in the administration and enforcement of the selfsame standards.

The authority for the creation by the city and county of San Francisco of both the city planning commission and the board of permit appeals all comes directly or indirectly from the charter of such city and county. Section 24 of the charter (Stats. 1931, pp. 2991-2992) provides: ''The board of supervisors shall regulate, by ordinance, the issuance and revocation of licenses and permits . . . Such ordinance shall . . . [also] specify which department shall make the necessary investigations and inspections and issue or deny . . . the permits and licenses therefor . . .

''Permits and licenses shall be issued by the departments as designated by ordinance, only after formal application for such permit or license. No such permit or license that is dependent on or affected by the zoning, set-back or other ordinances of the city and county administered by the city planning commission shall be issued except on the prior approval of the city planning commission. If any application for a permit or license is denied by the department authorized to issue same, the applicant may appeal to the board of permit appeals. . . .''

Section 39 of the city charter (Stats. 1931, pp. 3001-3002) further implementing the administrative plan and procedure, provides that: ''The mayor shall appoint five qualified electors, other than city and county officials or employees, for terms of four years, to constitute a board of permit appeals . . .

''Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any de-

partment, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused.''

Following denial by the planning commission of Kavanagh's application, on the ground that it would be contrary to the city's welfare because in contravention of an ordinance not yet effective, but which ordinance by its very terms (§ 50[1]) contemplates the issuance of permits under existing laws in the interim, Kavanagh appealed to the board of permit appeals under the provisions of the charter. The board pursuant to those provisions gave a full hearing to Kavanagh and the real parties in interest, and also inspected the site and surrounding area. Among other matters the board considered was a written résumé of the planning commission's hearing and action on the application, in which it is related that the director of planning recommended ''that the matter be approved in principle'' with certain modifications in parking stalls, and that the director further stated that in his opinion the matter ''should properly be heard by the Board of Permit Appeals, inasmuch as it has appellate jurisdiction and is an administrative tribunal empowered to exercise full discretion in passing upon a matter submitted for its decision. The authority of the Board . . . is not confined to the determination of whether there has been compliance with the ordinances relating to permit procedures, because, under authority granted by Section 39 of the Charter, the Board also has discretionary powers to pass upon a case on appeal. After such investigation as the Board may deem necessary, it may concur in the Department's action or overrule it.''

The director of planning was correct in his view of the board's jurisdiction and powers. The city's permit

---

[1]See footnote 1, *supra,* p. 240.

appeals procedure, in effect for 27 years, was upheld in *Lindell Co.* v. *Board of Permit Appeals* (1943), *supra*, 23 Cal.2d 303. There the board overruled the issuance of building permits and was sustained by this court with the observations (pp. 313-314) that ''[4] the Board of Permit Appeals in its appellate jurisdiction, like the [issuing department] in its original consideration of the case, is an administrative tribunal empowered to exercise full discretion in passing upon the matter as submitted for decision. . . . Certainly the Board . . . in reaching a decision . . . possessed at least the discretion'' which was had by the original department passing on the application, and that ''[5] the contention . . . that the authority of the Board . . . was confined to a determination of whether there has been compliance with the municipal ordinances regulating permit procedure, as presumably found . . . in granting the permit, is untenable. . . . [P. 315] In the present case, the Board of Permit Appeals, invested by charter provision and related municipal ordinances [prescribing, we may interpolate, comprehensive standards as hereinabove mentioned] with complete power to hear and determine the entire controversy, was free to draw its own conclusions from the conflicting evidence before it and, in the exercise of its independent judgment in the matter, affirm or overrule'' issuance of the permits. (See also *Lynn* v. *Duckel* (1956), 46 Cal.2d 845, 848-850 [1] [299 P.2d 236].)

In *Greif* v. *Dullea* (1944), *supra*, 66 Cal.App.2d 986, 998-999 [153 P.2d 581], the court said: ''The Board of Permit Appeals originates from the vote of the people of the county, followed by approval of the local charter by the state. . . . It has jurisdiction to hear appeals and confine the hearing to the evidence submitted by the respective parties, or it may make 'such further investigation as the board may deem necesary.' (Section 39 of the charter.) . . .

''[10] The Board of Permit Appeals of the City and County of San Francisco may take notice of the existence and contents of permit and license ordinances as part of its function to review the acts of departments authorized to issue, grant or deny licenses or permits. . . .

''[11] . . . The status of the San Francisco Board of Permit Appeals has been established. In *Lindell Co.* v. *Board of Permit Appeals,* 23 Cal.2d 303 [144 P.2d 4], an original proceeding in mandamus to compel the board to cancel its action in overruling the issuance of certain permits and to

reinstate the permits and affirm the action of another board, the court held (p. 310): '. . . that the remedy of mandate is not available to control the exercise of official discretion or judgment, or to alter or review action taken in the proper exercise of such discretion or judgment.' The opinion (p. 311) states: 'This comprehensive language affecting the issuance of *all* permits sought under authority of the relevant San Francisco Charter and ordinance provisions in plain terms vests the granting power with a "sound discretion" generally.' The opinion then considered the plan of appeal from departmental agencies. At page 313 it was further said: 'Section 39 of the San Francisco Charter creates the Board of Permit Appeals as the reviewing agency here concerned and defines its powers, duties and jurisdiction.' It was then held that the claim that the Board of Permit Appeals was confined to a determination of whether there had been a compliance with municipal ordinances regulating permit procedure was untenable.

"[12] Under the authority of the Lindell case it must be held that, consistent with the purpose of the charter, the Board of Permit Appeals was duly authorized to hear the appeal and to use its discretion in determining the judgment or order of the board."

Hinman *et al.* contend, however, that the action of the board of permit appeals was unconstitutional because unguided by any adequate standards. This contention is completely devoid of merit; it finds no foundation either in law or in fact. The obvious facts are that the charter and the ordinances of the petitioner city and county fully prescribe the conditions which must be met by those who would construct apartment dwellings, and specify the procedures which shall be followed by those who would secure permits. These conditions and procedures are, of course, the standards which must govern the appropriate administrative agencies, including both the planning commission and the board of permit appeals. As a part of the governing standards the city planning code was adopted and provisions were made for the various regulatory and supervisory bodies. Among the agencies set up for the carrying out of the governmental plan in accordance with the established standards are the planning commission and the board of permit appeals. As has been shown, the constitutional capacity of the board of permit appeals was squarely sustained in *Lindell Co. v. Board of Permit Appeals* (1943), *supra*, 23 Cal.2d 303, and

such capacity has since been uniformly accepted, as is shown by the several cited cases.

Nevertheless the Hinman group asserts that in the Lindell case the board was "guided by the adequate standard set out in the Emergency Ordinance" there involved, whereas in "the case at bar there is *no* ordinance and *no* standard to guide" the board. In truth, in Lindell the emergency ordinance which set the standard by which the board was guided was the same ordinance which guided the permit department whose action the board overruled. The same situation prevails here. Section 100 of the City Planning Code (Part II, chapter II of San Francisco Municipal Code), which is likewise a city ordinance, directs that the "Building permits for the erection or alteration of any building or structure, shall be issued . . . only after approval by . . . the City Planning Commission . . ." and section 101 provides that "In interpreting and applying the provisions of Sections 1 to 14, inclusive [general zoning regulations] . . . and Sections 99 [lot areas] and 100 of this Article, they shall be held to be the minimum requirements adopted for the promotion of the public health, safety, comfort, convenience and general welfare. . . ." The overall standard laid down for guidance of the planning commission in passing on building permit applications is thus that of "promotion of the public health, safety, comfort, convenience and general welfare," in the light of existing and effective city ordinances prescribing express or minimum standards. The adequacy of such overall standard cannot be successfully challenged. As in *Lindell*, the same standard guides the board of permit appeals—a board created by and under specific authority of the city charter, which likewise authorizes the board of supervisors to regulate the issuance of permits and expressly provides for resort to the appeals board if a permit be denied at the inception level by any of the designated agencies.

 Moreover, it would appear to be an elementary proposition not open to doubt that in the general and customary course of any appeal from a lower hearing officer, referee, board or tribunal, the standards to be followed by the body of higher authority, unless otherwise authoritatively provided, are the same as those which control the lower: the relevant law—whether enunciated by Constitution, statute, charter, ordinance, or controlling court decisions—and a lawful discretion, applied to the facts in evidence. As said in *Johnston* v. *Board of Supervisors* (1947), 31 Cal.2d

66, 74 [6] [178 P.2d 686], "When a board of supervisors acts in an administrative capacity, as in granting permits under a zoning ordinance, it is bound by the terms of the ordinance until the ordinance is amended through proper legislative procedure." It appears proper also to mention the familiar and elementary rule that in connection with the action of an administrative board, the fact that certain action is taken raises the presumption that the existence of the necessary facts had been ascertained and found (see *Atchison etc. Ry. Co.* v. *Kings County Water Dist.* (1956), 47 Cal.2d 140, 144 [3] [302 P.2d 1]; *Bailey* v. *County of Los Angeles* (1956), 46 Cal.2d 132, 136 [1] [293 P.2d 449]; *Swars* v. *Council of City of Vallejo* (1949), 33 Cal.2d 867, 872 [4] [206 P.2d 355]; *Miller* v. *Planning Commission* (1956), 138 Cal.App.2d 598, 603 [2] [292 P.2d 278]; *Cantrell* v. *Board of Supervisors* (1948), 87 Cal.App.2d 471, 479 [197 P.2d 218]), and likewise carries the implicit principle that such "necessary facts" are those required by the applicable standards which guided the board and by which the action of all inferior as well as higher tribunals is similarly guided.

 Here, as stated, the board of permit appeals held a full hearing, viewed the site, and made its independent order. Such order, as in the Lindell case (*Lindell Co.* v. *Board of Permit Appeals* (1943), *supra,* 23 Cal.2d 303, 323 [17], raises the presumption that the existence of the necessary facts, based on the standards as prescribed by the charter and applicable ordinances, interpreted and administered to promote public health, safety, comfort, convenience and general welfare, had been ascertained and found.[7] It follows

[7]One of the members of the appeals board explained as follows his vote to overrule the planning commission, in a memorandum concurred in by another member likewise so voting: "The General public welfare is a broad term that applies not necessarily to a specific locality—but the welfare of all of the citizens of . . . San Francisco . . . [I]n my opinion, no argument was advanced that I would consider against the best interests of the welfare of the citizens of San Francisco.

"On the other hand it is my belief that the Citizens . . . will benefit with the construction of another much needed thoroughly modern apartment house building that we are informed is in compliance with the existing zoning and structural regulations and also the health and fire rules.

"It is also of interest to the property owners with the tax rate this year rising to a probable all time high . . . that the . . . taxes that this property will add to the City's revenue, will assist in a small way to decrease the loss caused by the necessitated destruction of taxable property to provide freeways."

that the action of the board in overruling the commission may not be successfully attacked on the ground that such standards were lacking. (See also *In re Petersen* (1958), 51 Cal.2d 177, 184-185 [17-19] [331 P.2d 24]; *Rescue Army* v. *Municipal Court* (1946), 28 Cal.2d 460, 471 [171 P.2d 8]; *Tustin Heights Assn.* v. *Board of Supervisors* (1959), 170 Cal.App.2d 619, 633-635 [14-16] [339 P.2d 914].)

The real parties in interest suggest that the terms of the as yet ineffective "new" zoning ordinance "certainly was a reasonable place [for the planning commission] to look for guidance in passing on" general welfare requirements. Such ordinance by its own terms remains inoperative for some months to come, however, and it is equally reasonable to view such terms, particularly when combined with the provisions of section 50[1] specifically authorizing completion of buildings for which permits are granted in the interim, as expressing a general policy that the welfare of the city will not necessarily be impaired by any such building. Certainly the board of permit appeals has the power and the discretion, after hearing, which included viewing the premises and the locality, and considering the evidence before it, to come to the conclusion that the proper standards to follow were those prescribed by the then existing planning code rather than those not yet effective, and that it was to the general interest that Kavanagh's $3,500,000 building project be accomplished.

In the circumstances the superior court clearly exceeds its jurisdiction when it undertakes to require the board to set aside its decision.

We hold that the standards administered by the board of permit appeals are, as a matter of law, precisely the same standards which are administered at the primary level by the planning commission, and that such standards are lawful and adequate in the premises; we further hold that there is no support in the record for the proposed "finding" of the superior court "that the Board of Permit Appeals, in reversing the order of the City Planning Commission and ordering the issuance of a building permit in this case, was unguided by any standards, statutory or otherwise, and that its action in so overruling the City Planning Commission and issuing said building permit to plaintiff Kavanagh, was arbitrary and capricious and an abuse of the discretion granted to it, and was therefore without due process of law and in

---

[1]See footnote 1, *supra*, p. 240.

violation of the Constitution of the United States of America and of the State of California.''

The further contention by the Hinman group that they have been denied due process or that their property is being taken without due process of law appears to be an imaginary or derivative issue, based only on the untenable claim that the action of the board of permit appeals was void, and advanced in an effort to delay the administrative and judicial processes, particularly to delay Kavanagh's commencement of his building operation until after the new ordinance (492-58) shall have gone into effect. We hold that such further contention is completely devoid of merit, being supported neither by fact nor law. Whether the new ordinance (492-58), in view of its declared policy of allowing property owners a substantial time in which to commence new developments under existing standards and considering the substance of the regulations at the time of Kavanagh's application, together with the facts surrounding the processing of that application, could in any event become operative on the subject permit application, we need not in this proceeding determine.

Let a peremptory writ of prohibition issue restraining the superior court of the state of California, in and for the City and County of San Francisco, and the Honorable Orla St. Clair, judge thereof, from any further proceedings in the action entitled *Frank Hinman Jr. et al.,* v. *Board of Permit Appeals et al.,* being action No. 489702 in said superior court, except to vacate the temporary restraining order issued therein and to deny the prayed for relief.

Gibson, C. J., Traynor, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.

The petition of the respondents and the real parties in interest for a rehearing was denied January 13, 1960.