[S. F. No. 21109. In Bank. Oct. 2, 1962.]

EDWARD L. SILLER et al., Plaintiffs and Appellants, v. BOARD OF SUPERVISORS OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents; MASON-PINE, INC., et al., Real Parties in Interest and Respondents.

Lawrence W. Jordan, Jr., Bernard P. McCullough and Rogers, Clark & Jordan for Plaintiffs and Appellants.

Dion R. Holm, Thomas M. O'Connor, City Attorneys, and Bernard J. Ward, Deputy City Attorney, for Defendants and Respondents.

Jacobs, Sills & Coblentz and Donald M. Cahen for Real Parties in Interest and Respondents.

SCHAUER, J.—Plaintiffs appeal from a judgment denying their petition for a peremptory writ of mandate to compel the Board of Supervisors and the Planning Commission of the City and County of San Francisco to set aside an order granting a building variance to Mason-Pine, Inc., the principal real party in interest, hereinafter sometimes called Mason-Pine.

As ground for reversal, plaintiffs contend that the record upon which the planning commission acted shows as a matter of law that the provisions of the planning code allowing variances have not been met; i.e., that in granting the subject variance the commission abused its discretion and exceeded its authority. ▮▮ Mandamus is an appropriate remedy to test the proper exercise of discretion vested in a local board; and where, as here, the challenge rests on claimed insufficiency of the evidence, the court's power of review is conditioned on determining "that the findings are not supported by substantial evidence in the light of the whole record" before the board. (Code Civ. Proc., § 1094.5, subd. (c); *Atchison etc. Ry. Co.* v. *Kings County Water Dist.* (1956) 47 Cal.2d 140, 143 [1] [302 P.2d 1]; *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [5] [144 P.2d 4].) ▮ Upon such review the "court does not have the right to judge the

intrinsic value of the evidence or to weigh it." (*Damiani* v. *Albert* (1957) 48 Cal.2d 15, 17 [1] [306 P.2d 780]; *Thompson* v. *City of Long Beach* (1953) 41 Cal.2d 235, 240 [3] [259 P.2d 649].)

For the reasons hereinafter stated we have concluded that the trial court was correct in its determination that upon the entire record before the commission the granting of the variance is not shown to be unsupported by substantial evidence, that no abuse of discretion appears, and that the judgment should be affirmed.

Plaintiffs allege in their petition for the writ that they own real property located within 300 feet of property owned by the principal real party in interest on the corner of Mason and Pine Streets in San Francisco; that in February 1960 Mason-Pine filed with the planning commission an application for a variance from certain off-street parking provisions of the city planning code with respect to apartments proposed to be constructed in San Francisco; that following hearings the commission granted the variance; that plaintiffs appealed to the board of supervisors, which heard the matter and affirmed the order of the commission. Plaintiffs further allege that Mason-Pine presented to the commission no evidence of special circumstances and unnecessary hardship, as required by the provisions of the planning code, and that therefore the order granting the variance was unauthorized and invalid.

The trial court reviewed the record of the proceedings before the commission, heard brief testimony from one witness as to statements made by himself at the hearing before the board of supervisors, and following argument by the parties denied plaintiffs' petition and discharged the alternative writ theretofore issued. This appeal by plaintiffs followed.

On March 31, 1960, when Mason-Pine was granted the variance by the commission, article 4.5 of the San Francisco Planning Code (ch. II, pt. II, San Francisco Municipal Code), in effect since 1955, set forth certain off-street parking requirements. Section 111 provided that "The *interpretation and application* of the provisions of this Article shall be made in the light of a good faith attempt on the part of the Board of Supervisors to take a step toward relieving traffic congestion and to enhance the public safety, convenience and welfare by requiring *ample parking facilities* in connection with dwelling units hereafter constructed." (Italics added.)

Section 112 set forth certain definitions: "For the purpose of this Article . . . (b) Dwelling Unit. The words 'dwelling

unit' mean a room or suite of rooms that is designed for, or is occupied by, one family doing its own cooking therein and having only one kitchen . . . (d) Off-Street Parking Space. The words 'off-street parking space' mean an off-street area within the building housing the dwelling unit, or on the lot where the building is located, not less than one hundred sixty (160) square feet in area, net, exclusive of access or maneuvering area, or ramps, columns, or the like, to be used exclusively as a temporary storage space for one private motor vehicle. Each required parking space shall be of usable shape, independently accessible and properly maintained.''

Section 113 provided that ''The number of off-street parking spaces required for dwelling units hereafter constructed in . . . San Francisco shall be one off-street parking space for each dwelling unit.''

Section 114 authorized variances, as follows: ''The City Planning Commission may, upon application, *grant variances* from *any of the provisions* of Section 113 of this Article, after public notice and hearings, if it is of the opinion that special circumstances exist in the particular case, and that unnecessary hardship would result from the strict interpretation and enforcement of such provisions . . . .'' (Italics added.)

The variance granted by the commission to defendant authorized 174 parking spaces for a building to contain 190 dwelling units (rather than the one-for-one ratio set forth in section 113, quoted hereinabove), none of which parking spaces was either as large as 160 square feet in area or required to be independently accessible. There was evidence that Mason-Pine had purchased the subject site with full knowledge of the Planning Code provisions.

From the building plans submitted by Mason-Pine and from the evidence presented at the hearings before the planning commission, it appears that the proposed building as finally approved by the commission is to contain 19 stories with 190 dwelling units, of which 114 are to be one-bedroom units and the remaining 76 are to be ''efficiency units'' (one room with adjoining kitchenette and bath). The building is to be located at the corner of Mason and Pine Streets, within five blocks of San Francisco's central financial district and of the Union Square shopping area, and assertedly is designed for use by moderate-income tenants desiring to live within walking distance of their places of work. There was evidence that only 25 per cent to 50 per cent of such moderate-income tenants (i.e., the tenants of only 48 to 95 of the 190 units in

the building, which nevertheless was to contain 174 parking spaces) would own automobiles; that within the area surrounding and serving the subject site there were three garages with storage parking stalls available; and that the operator of "the parking lot on the subject site" had never been able to rent more than 10 of his 40 available parking stalls on a monthly basis despite repeated efforts so to do.

Mason-Pine asserted also that if denied a variance it would be compelled to decrease the number of proposed dwelling units in order to comply with the one-for-one 160 square feet parking space requirement; that such a change in design would necessarily result in larger units with correspondingly higher rents which would include the cost of vacant garage space, and which would require moderate-income tenants to double up or would prohibit them from occupying the premises.

In addition, the planning commission members either viewed the site[1] or were personally familiar therewith and by their own knowledge were aware of the physical condition of the site and of the neighborhood characteristics. Such view and knowledge constitute independent evidence which must be deemed by the reviewing court to have been considered by the commission members in reaching their decision. (See *Key* v. *McCabe* (1960) 54 Cal.2d 736, 739 [3] [8 Cal.Rptr. 425, 356 P.2d 169]; *City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236, 251 [14] [1 Cal.Rptr. 158, 347 P.2d 294]; *Flagstad* v. *City of San Mateo* (1957) 156 Cal.App.2d 138, 141-142 [5] [318 P.2d 825].)

Further, the granting or denial of a variance rests primarily in the discretion of the body designated by the applicable ordinance or statute; no vested right is affected by either the denial or the grant; where a variance is granted it is presumed that official duty was performed in investigating the matter and that the existence of the necessary facts was found; and the decision of the municipal body to grant or deny a variance will not be disturbed by the courts in the absence of a clear and convincing showing of an abuse of discretion. (*Flagstad* v. *City of San Mateo* (1957) *supra*, 156 Cal.App.2d 138, 140-141 [1-4] and cases there cited; see also *County of San Diego* v. *McClurken* (1951) 37 Cal.2d 683, 691-

---

[1]For the purposes of this opinion we disregard as evidentially incompetent a statement (attributed to Mason-Pine's attorney) to the board of supervisors that in the opinion of Cahill Brothers, the engineers who were developers of the project, further excavation to provide additional garage space would be unsafe on the steep hillside where the building was to be constructed.

692 [11-12] [234 P.2d 972] ; *City & County of San Francisco* v. *Superior Court* (1959), *supra*, 53 Cal.2d 236, 251 [13].)

 In reliance upon various cases dealing with variances from uses permitted under zoning schemes, plaintiffs first urge that the evidence is insufficient to show the "special circumstances . . . and . . . unnecessary hardship" which the San Francisco Planning Code (§ 114 of art. 4.5) states the commission must be "of the opinion" would result before a variance from the off-street parking requirements may be granted. Particularly is this true, say plaintiffs, where, as here, the property was purchased with full knowledge of the restrictive provisions. (See *Minney* v. *City of Azusa* (1958) 164 Cal.App.2d 12, 31-32 [20, 23] [330 P.2d 255] ; *City of San Marino* v. *Roman Catholic Archbishop* (1960) 180 Cal. App.2d 657, 673 [12] [4 Cal.Rptr. 547] ; *Clark* v. *Board of Zoning Appeals* (1950) 301 N.Y. 86 [92 N.E.2d 903] ; *Devaney* v. *Board of Zoning Appeals* (1946) 132 Conn. 537 [45 A.2d 828].)

In the first place however, the variance here granted was not from a zoning plan or scheme, but rather from provisions for off-street parking which would appear to be more in the nature of a construction code or building ordinance. Further, such code itself specifies, in section 111 of article 4.5 that, so far as here material, its provisions shall be interpreted "in the light of a good faith attempt . . . to take a step toward *relieving traffic congestion* and to enhance the public safety, convenience and welfare by requiring *ample parking facilities* in connection with dwelling *units hereafter constructed.*" (Italics added.)

The authorization to the planning commission to grant variances "if it is of the opinion that special circumstances exist in the particular case, and that unnecessary hardship would result from the strict interpretation and enforcement" of the off-street parking requirements must be viewed in the light of the just-quoted provision laying down the rule for interpretation of article 4.5.

So viewed and so interpreted, it appears that the commission could determine that to require Mason-Pine to provide in its proposed building many parking spaces which would stand vacant and unused, which thus would *not* contribute toward "relieving traffic congestion," and which would be substantially *more than* ample "in connection with dwelling units" to be constructed, would constitute a special circumstance and unnecessary hardship against which the variance provisions

of section 114 were designed to authorize relief. As already noted herein, even the 174 parking spaces required under the variance as granted by the commission were, according to Mason-Pine's evidence, substantially in excess of those which might be expected to be used by the 48 to 95 tenants who would own automobiles. Further, the rule of interpretation prescribed in section 111 of article 4.5 makes it clear that the provision of off-street parking for other than occupants of new dwelling units was not the purpose of the subject article.

 Plaintiffs next point out that none of the 174 parking spaces provided for in the proposed building meets the definition found in section 112 of being independently accessible and containing a minimum area of 160 square feet, and contend that in any event section 114 empowers the commission to grant variances from only the one-for-one parking requirements of section 113 and not from the provisions of section 112. This contention is without merit. Section 114 by its terms authorizes variances from "*any* of the provisions of Section 113" (italics added). Section 113 specifies the "number of off-street parking spaces required for dwelling units hereafter constructed." To learn the meaning of the term "off-street parking space" it is necessary to refer in turn to the definitions laid down in section 112. It thus follows that such definitions become in practical effect a part of section 113, from the provisions of which the commission may grant variances.[2]

For the reasons above stated it appears that the commission did not abuse its discretion or exceed its authority in granting the subject building variance. The judgment of the trial court refusing the peremptory writ is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Tobriner, J. concurred.

Appellants' petition for a rehearing was denied October 31, 1962.

---

[2] It may be observed also that the commission, had it found that the 160 square feet areas for parking spaces were desirable in the premises, in its discretion could have required that the total amount of space allocated to parking be divided into areas each containing a minimum of 160 square feet. It is not for the court, however, to reexamine the way in which the commission exercised its discretion.