[Civ. No. 33105. Second Dist., Div. Five. Nov. 18, 1969.]

DELTA RENT-A-CAR SYSTEMS, INC., et al., Plaintiffs and Appellants, v. CITY OF BEVERLY HILLS et al., Defendants and Respondents.

782

**COUNSEL**

Leonard Horwin for Plaintiffs and Appellants.

Allen Grimes, City Attorney, and Colin Lennard, Assistant City Attorney, for Defendants and Respondents.

**OPINION**

**CHANTRY, J. pro tem.**\*—Delta Rent-A-Car Systems, Inc., a California corporation, and Ruth Nagel Jones (Jones) appeal from a judgment of the Los Angeles Superior Court denying them a writ of mandate to compel the City of Beverly Hills (City) to grant them a driveway access through the frontage of the lot occupied by Delta to South Santa Monica Boulevard. The lot occupied by Delta is one of four lots in the block between Wilshire

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Boulevard on the west to Linden Drive on the east in the City of Beverly Hills. The most westerly of these four lots constitutes the northeast corner of Wilshire and South Santa Monica Boulevard. This corner is owned by Jones and leased to Delta. Jones also owns the most easterly lot in this block, which may be described as the northwest corner of Linden Drive and South Santa Monica Boulevard. These two corner lots are separated by two lots owned by third parties and occupied by business buildings. We shall refer to the lot leased to Delta as lot 1 and the Linden corner as lot 2. Lot 2 is leased to West Coast Auto Park. There is no present driveway through any of the frontage of the four lots except a driveway into lot 2. There are approximately 60 feet between the rear of the four lots comprising the previously described block and the south curb of North Santa Monica Boulevard. All of this area belongs to the Pacific Electric Railway. Jones leases a 40-foot portion of the railway property contiguous to the rear of the four lots in this particular block. This 40-foot strip connects lots 1 and 2 and also provides access through lot 2 to the area leased by Delta. Driveway access to Delta's lot is limited to an entrance on the other side of a restaurant through lot 2 (West Coast Auto Park) approximately 350 feet from Delta's office building on lot 1. The existing driveway also serves as an entrance to the West Coast parking lot. The use of the West Coast driveway by customers of Delta and West Coast results in a certain amount of traffic congestion which causes inconvenience of the 40 percent of Delta's customers who arrive by automobile and use that driveway.

Appellants are unhappy with this arrangement and seek by this action to obtain a driveway directly from lot 1 to South Santa Monica Boulevard. A map depicting the block and properties in question is attached (Exhibit A) as a visual aid to the written description. [See *infra,* p. 789.]

## ADMINISTRATIVE ACTION

Delta contemplated opening a new driveway access only 100 feet from its small office building on lot 1. Delta applied to the Director of Public Works (Director) of the City. The Director tentatively determined upon approval of Delta's driveway request and referred the matter to the Beverly Hills City Council (Council). Notwithstanding the Director's indication for approval, the Council decided that the application should be rejected. The Director took no further action. This action was treated by Delta as a refusal by the Director to grant the driveway permit. " 'Any conduct on the part of the officer or tribunal under a duty to perform signifying unequivocal intention not to do so amounts to a refusal.' (55 C.J.S. 66.)" (*Palmer* v. *Fox,* 118 Cal.App.2d 453, 456 [258 P.2d 30].) Delta thereafter filed directly with the Council an application for a driveway permit. This for all practical purposes constituted an appeal from the Director's denial

of the permit. The Council referred the matter to the City Traffic Commission. The Traffic Commission recommended approval with certain restrictions. Thereafter the Council denied the driveway access on the grounds that "the granting of the permit would create a serious traffic hazard to the detriment of the public safety and the general welfare," thus affirming the Director's rejection.

## SUPERIOR COURT ACTION

After the Council's action, Delta and Jones filed a petition for writ of mandamus to compel the City, its Council and the Director of Public Works to grant them a driveway through the frontage of their lot to South Santa Monica Boulevard. The petition alleged that both Delta and Jones are beneficially interested in the petition; that lack of a driveway is highly prejudicial to Delta's business; that all administrative remedies have been exhausted; that the Director of Public Works and the Council have violated their statutory duties; that petitioners have a right to access to the highway on which their property abuts; that they have no adequate remedy at law, and that therefore a writ should issue to the City to grant the driveway access. A demurrer to the petition by the City was overruled. The City answered the complaint generally and alleged affirmatively that administrative mandamus was not the proper remedy and that the writ would compel a hazardous and illegal act. The superior court denied the writ, concluding that the Council proceeded within its jurisdiction and gave a fair and lawful hearing; that the Council's decision is supported by the evidence, and that the Council did not abuse its discretion nor act unreasonably or capriciously in denying the driveway access.

## ISSUES

As to the quasi-legislative acts of administrative agencies, judicial review is limited to an examination of the proceedings before the agency to determine whether its action has been arbitrary, capricious or entirely lacking in evidentiary support, or whether it has failed to follow the procedure and give notices required by law. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83].) The issues in this case are set forth in these questions:

1. Does the City have the authority to deny a driveway access?

2. Was the procedure followed by the Council and Director of Public Works a denial of due process of law?

3. Was the denial of a driveway access an abuse of discretion?

4. Was the denial of a driveway access arbitrary or capricious?

## Authority to Deny Driveway

Appellants and respondents argue extensively whether driveway access is a property right which must be compensated for if taken, or if the City may deny it without compensation pursuant to its police power. This issue is important to appellants, for they argue that the City has taken their property without compensation; that since "money damage would be inadequate or no remedy," they are thereby deprived of their remedy at law, and therefore the only alternative remedy for them is a writ of mandate to compel the City to grant them a driveway access.

Section 1086 of the Code of Civil Procedure provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." But appellants' mere statement that "money damage would be inadequate or no remedy" does not, without more, entitle them to a writ of mandate. Even if denial of a driveway access were found to be a compensable taking, appellants have not adequately shown that they do not have a plain, speedy and adequate remedy available to them. Appellants must seek other grounds to support their petition for writ.

■ Therefore, we find it necessary only to determine that the City does have the authority to deny a driveway access in the circumstances here. The general rule is that an abutting owner or occupant is not entitled to access to his land at every point between it and the highway but only to reasonable and convenient access to his property and the improvements on it. (39 Am.Jur.2d 553, Highways, Streets, and Bridges, § 178; *Genazzi* v. *County of Marin* (1928) 88 Cal.App. 545, 547 [263 P. 825]; *People* v. *Murray* (1959) 172 Cal.App.2d 219, 225 [342 P.2d 485].) Even appellants' attorney at trial stated "that Beverly Hills is a bottleneck of traffic." Considering the location and traffic conditions, appellants now have reasonable and convenient access to their property.

### Permit Procedure Under Municipal Code

Beverly Hills Municipal Code section 7-3.05, pertaining to permits for driveways access, provides in pertinent part: "The Director of Public Works shall have the authority to grant or refuse such permits as in his judgment the public interest or convenience may require. When the decision of the Director of Public Works is adverse, the applicant may appeal to the Council."

■ Appellants contend they were denied due process by the Director of Public Works, because the Director did not exercise the authority invested in him but rather relied on the Council to do it for him. We see no merit to this contention under the facts heretofore recited. As we have

mentioned previously, the appellants' request for a driveway permit filed with the Director and rejected by the Council was treated by appellants as an adverse ruling by the Director. If the appellants, at the time of the first action on their application, were of the opinion which they now assert, that the Director did not exercise the authority vested in him, a writ to force the Director to perform his statutory duty was available to them. (*Hollman* v. *Warren* (1948) 32 Cal.2d 351, 355 [196 P.2d 562].)

### ABUSE OF DISCRETION

In determining whether an abuse of discretion has occurred, a court may not substitute its judgment for that of the adminstrative board. (*Pitts* v. *Perluss* (1962) 58 Cal.2d 824 [27 Cal.Rptr. 19, 377 P.2d 83].) If reasonable minds may disagree as to the wisdom of the board's action, its determination must be upheld. (*Manjares* v. *Newton* (1966) 64 Cal.2d 365 [49 Cal.Rptr. 805, 411 P.2d 901].) Where the challenge rests on claimed insufficiency of the evidence, the court's power of review is conditioned on determining that the findings are not supported by substantial evidence in the light of the whole record before the board. Upon such review, the court does not have the right to judge the intrinsic value of the evidence or to weigh it. (*Siller* v. *Board of Supervisors* (1962) 58 Cal.2d 479 [25 Cal.Rptr. 73, 375 P.2d 41].)

Appellants contend there is no evidence in the record to support the City's decision. We find that there is substantial evidence in the record to support the City's decision. The transcript of the informal hearing before the Council reveals that the councilmen were familiar with the land area, the existing traffic problems and the particular intersections involved in this action.

*Siller* v. *Board of Supervisors, supra,* was a zoning variance case with circumstances similar to this case. There the court said: ". . . [T]he planning commission members either viewed the site or were personally familiar therewith and by their own knowledge were aware of the physical condition of the site and of the neighborhood characteristics. Such view and knowledge consitute independent evidence which must be deemed by the reviewing court to have been considered by the commission members in reaching their decision." In *Flagstad* v. *City of San Mateo* (1957) 156 Cal.App.2d 138 [318 P.2d 825], the court found that a planning commission's decision on a zoning variance could rest on evidence gathered by the commissioners' personal observation "such as . . . the fact that traffic at the intersection is heavy."

Appellants' reliance on *Broadway, Laguna, Vallejo Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 767 [59 Cal.Rptr. 146, 427 P.2d 810]

is misplaced. That case did not change *Siller*. It merely said that the rule of *Siller* does not apply to agencies which must expressly state their findings and must set forth the relevant supportive facts. *Siller* still applies in this case.

In addition to the councilmen's personal knowledge of the intersection and its traffic problems, as demonstrated by the record, the councilmen had before them appellants' application, exhibits and their own testimony as to the amount of use the proposed driveway would receive. Together these provide substantial evidence to support a finding that the granting of the permit would create a serious traffic hazard to the detriment of the public safety and the general welfare.

### Arbitrary and Capricious

Appellants contend that the City has a uniform policy of granting every lot in the city a driveway through its frontage to the abutting highway and that a denial of a driveway to Delta would be arbitrary and capricious.

There is no evidence in the record to support appellants' assertions about City policy other than their own attorney's statements to that effect. Appellants suggest that if we take judicial notice, it will be apparent at once that in Beverly Hills improved lots have driveway access through the public highway or public alley on which they front. Respondents suggest that one need only drive down any street in Beverly Hills to notice that most lots do not have front driveways. Judicial notice one way or the other concerning the number of driveways in Beverly Hills will not establish whether the City now has a uniform policy concerning driveway permits. The appellants presently have egress and ingress to lot 1 via lot 2. We can find no basis for holding that the City has been arbitrary, capricious or discriminatory in denying this particular driveway.[1]

The judgment is affirmed.

Stephens, Acting P. J., and Reppy, J., concurred.

A petition for a rehearing was denied December 11, 1969, and appellants' petition for a hearing by the Supreme Court was denied January 14, 1970.

---

[1]The denial of a driveway permit does not affect any other remedy available to the appellants, whether by inverse condemnation or some other remedy.