481 So.2d 1223 (1985)
EXCHANGE INVESTMENTS, INC., et al., Appellant,
v.
ALACHUA COUNTY, Etc., et al., Appellees.
No. BF-104.
District Court of Appeal of Florida, First District.
November 27, 1985.
*1224 Herbert T. Schwartz of Schwartz & Wilson, Gainesville, for appellant.
Thomas A. Bustin, Gainesville, and Dennis R. Long of Wilson, Wilson & Long, Palm Harbor, for appellee Alachua County.
Frederick D. Smith of McGalliard, Mills, deMontmollin, Smith & Monaco, Gainesville, for appellee Interstate.
BARFIELD, Judge.
Appellants, plaintiffs below, appeal from an order granting a motion to dismiss. The complaint challenges Alachua County's rezoning of property owned by Interstate Management Corporation. The issues presented on appeal are whether the trial court erred in dismissing Count I of the complaint, which alleged that the rezoning decision was void due to procedural irregularities, on grounds that plaintiffs' lacked standing; and, whether the trial court erred in dismissing Count II of the complaint, which alleged that the rezoning decision was arbitrary, unreasonable, and unlawful, also on standing grounds. We hold that the trial court erred and reverse.
Appellants are owners of real property in Alachua County located on South West Archer Road. According to the complaint, their properties are "located within one mile of the parcel owned by defendant [appellee] Interstate... ." This is the area where Shands and the VA hospitals and the University of Florida health colleges are located. There are severe traffic and parking problems in the area.
Alachua County had long adhered to zoning which prohibited commercial development in the area. In September, 1983, however, the county approved rezoning of Interstate's seven acre parcel as a Planned Unit Development (P.U.D.). According to the complaint, Interstate plans to construct a hotel and convention facility on the site.
Later in 1983, the appellants challenged the rezoning decision in circuit court. The complaint was dismissed on grounds that plaintiffs lacked standing. This court affirmed, per curiam, without opinion. Exchange Investments, Inc. v. Alachua County, 472 So.2d 1184 (Fla. 1st DCA 1985). The record in that case indicates that the appellants had appeared at the hearing and had not pled that a "legally recognizable interest" was being adversely affected.
In September of 1984, Interstate went back to the county and asked for several changes to its approved plan. Of primary interest is the request to reduce the number of parking places from 392 (as required by the Alachua County zoning ordinance) to 304. The county approved the changes *1225 and the appellants sought relief in circuit court. The essence of their complaint was similar to that of the previous suit: that the action was procedurally defective (Count I) and that it was "arbitrary unreasonable and unlawful" because it violated the parking requirements of the zoning ordinance. Plaintiffs alleged that they would suffer special injuries in the form of "severely aggravated traffic congestion and parking overflow."[1] The county sought to dismiss the complaint on standing grounds. The court granted the motion with leave to amend. The plaintiffs chose not to amend but instead undertook an appeal to this court.
In their first count, the plaintiffs alleged that the rezoning decision "was adopted without due notice as required by section 20 of Alachua County Ordinance 80-3 and other applicable law, or otherwise violated procedural requirements for the adoption of such zoning decisions." According to Renard v. Dade County, 261 So.2d 832, 838 (Fla. 1972), "[a]ny affected resident, citizen, or property owner of the governmental unit in question has standing to challenge such an ordinance." The only reason these same plaintiffs were found not to have standing on these grounds in the previous action was because their attorney had attended the hearing. No such allegation is made in this instance, and we therefore conclude the plaintiffs have standing as to Count I.
The dismissal of Count II on the basis of lack of standing presents a closer and more complex question.
Because of the three standards announced in Renard, the first step in the analysis is to determine in which category a particular complaint or count falls. Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082, 1087 (Fla. 1978). The appellants have argued to the court that the action is "illegal" (because the commission approved fewer parking spaces than required by the ordinance) and asks that we apply the same standing test as that in Count I. The complaint describes the action as "arbitrary, unreasonable, and unlawful." The critical question is whether the commission had legal authority to grant a variance. The Alachua County Zoning Ordinance provides that "minor changes and/or deviations from the preliminary Planned Unit Development master plan which do not affect the intent or character of the development shall be reviewed and may be approved by the county commission in the manner set forth in subsection 8.3d [which provides for notice]." Id. subsection 8.3f. Thus, the commission has authority to approve the change and the action is not illegal. Therefore, the second test from Renard should apply: appellants must demonstrate a legally recognizable interest which is adversely affected by the proposed zoning action. 261 So.2d at 838.
There is no controlling precedent, but Florida cases suggest that appellants have properly pled standing. Appellees heavily rely on Skaggs-Albertson's Properties, Inc. v. Michels Belleair Bluffs Pharmacy, Inc., 332 So.2d 113 (Fla. 2d DCA 1976). The court there found that a competitor across the street lacked standing because of alleged increases in traffic and parking problems. This case is distinguishable, however, because it was a suit for injunction and therefore a different standard of standing was being applied (special injury). Additionally, while the authorities generally agree that traffic is a matter of general concern and does not grant standing in zoning matters, property owners do have a legal interest in their own off-street parking facilities. Skaggs relied on an older Georgia case, Victoria Corp. v. Atlanta Merchandise Mart, 101 Ga. App. 163, 112 S.E.2d 793 (1960). The recitation of facts in that case indicate that "the only objection advanced by officers of the Victoria Corporation to the erection of the building was the increased traffic and congestion of the streets which would be generated... ." *1226 Id. at 165, 112 S.E.2d at 794 (emphasis added). Thus, the Georgia opinion did not reach the question of off-street parking and reliance on the opinion for that proposition is incorrect, not to mention illogical.
In Thompson v. Planning Commission, 464 So.2d 1231 (Fla. 1st DCA 1985) nearby property owners were found to meet the requisites for injunctive relief. There, neighboring landowners claimed that a variance, which permitted construction of a building with fewer than the required number of parking spaces, was invalid. Although standing was not discussed as a discrete issue, Thompson can certainly be read for the proposition that parties' interests in their off-street parking facilities are sufficient to grant standing to contest a zoning variance to a nearby landowner.
Inasmuch as we find no Florida precedent to control our disposition of this appeal, we have examined other authorities for guidance. We find that these authorities suggest the trial court erred in dismissing the complaint.
In reality, two questions are presented: (1) is off-street parking a legally recognizable interest and, if so, (2) are appellants close enough to appellee's development that their own parking interests could be adversely affected by any overflow caused by a "shortage" of spaces in the development.
Thompson suggests that off-street parking is a legally-recognizable interest. It is not difficult to understand how the interests of commercial and residential property owners in an urban environment are closely tied to the parking available to those who intend to use the property. Overflow from a nearby landowner can obviously have an adverse effect. Other jurisdictions have permitted neighbors to challenge off-street parking variances without even discussing the standing issue. Siller v. Board of Supervisors, 58 Cal.2d 479, 375 P.2d 41, 25 Cal. Rptr. 73 (1962); Russell v. Zoning Board of Appeals, 349 Mass. 532, 209 N.E.2d 337 (1965); Brush v. Zoning Board of Appeals, 57 Misc.2d 751, 293 N.Y.S.2d 387 (Sup.Ct. 1968).
The more difficult question is whether appellants are close enough to the development to be adversely affected by a parking overflow. Professor Anderson states: "While the essential element of standing is the special damage which will be suffered, the ease with which this can be established appears to vary with the distance between the property subject to the decision and the land of the plaintiff... . The factual problem of whether the decision affects certain land becomes more difficult as the distance between the land subject to the decision and the land of the petitioner increases." 4 Anderson, American Law of Zoning § 25.18 (2d ed. 1977). See Dillon Cos. v. City of Boulder, 183 Colo. 117, 515 P.2d 627 (1973) (homeowners 1 1/2-3 1/2 blocks from proposed shopping center having standing); Brechner v. Incorporated Village of Lake Success, 23 Misc.2d 159, 201 N.Y.S.2d 254 (Sup.Ct. 1960) (plaintiffs residing from 1050 to 1200 feet from rezoned property pled standing).[2]
The only case located where the distance question was an issue in the off-street parking context is Gaona v. Town of Huntington Zoning Board of Appeals, 106 App.Div.2d 638, 483 N.Y.S.2d 430 (N.Y. 1984). The court found that plaintiffs, who owned property within 700 feet of the property affected, had standing "as a matter of law." The rationale for the holding is not clear from an examination of the authorities cited.
We conclude that there is ample authority that off-street parking is a legally recognizable interest. The issue of distance is more difficult, but it is not impossible to imagine a situation where parking is so scarce that overflow could affect properties as much as a mile distant. People might park a mile away and walk if that was the closest place available, or there *1227 could be a "domino effect" where the overflow from one lot goes into the next lot, creating shortage and overflow there and so on, until it reached plaintiffs' property. Since, for purpose of a motion to dismiss for failure to state a cause of action, the allegations of the complaint are assumed to be true and all reasonable inferences are allowed in plaintiffs' favor, Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881 (Fla. 1972), we hold that the trial court erred in dismissing the complaint. Plaintiffs may not be able to prove standing, but they have pled it.
REVERSED.
JOANOS, J., concurs.
ERVIN, J., concurs in part and dissents in part, with written opinion.
ERVIN, Judge, Concurring in part and dissenting in part.
Were it not for this court's prior per curiam affirmance (PCA), without opinion, involving the same parties, I could agree without hesitation to all of Judge Barfield's fine opinion for the court. My difficulty in doing so, however, is that a portion of one of the issues now raised on appeal was previously considered and disposed of by our prior PCA. In that an appellate court can take judicial notice of its own records, Department of Legal Affairs v. District Court of Appeal, 5th District, 434 So.2d 310, 313 (Fla. 1983), I examined the record in our prior case (Exchange I) and found that the appellants had there alleged that the rezoning of the property to a PUD was arbitrary, unreasonable and capricious. Specifically, they alleged that the values of their properties were "immediately threatened" by the county's zoning decisions "in that the commercial development permitted by the COUNTY'S action will aggravate traffic and congestion and create an environment of economic blight along Archer Road." In Exchange I, this court's PCA of appellants' issue on appeal in effect determined that appellants' "traffic and congestion" allegations did not meet the "legally recognizable interest" test necessary for standing. See Renard v. Dade County, 261 So.2d 832, 838 (Fla. 1972). Consequently, because appellants' injuries due to traffic congestion were alleged in both cases, the "legally recognizable interest" standard applies to both, and, in that the parties are the same, the principle of estoppel by judgment bars appellants from raising the traffic congestion claim again. See Red Carpet Corp. v. Roberts, 443 So.2d 377, 379 (Fla. 1st DCA 1983).
The doctrines of estoppel by judgment or res judicata are not undermined by reason of the fact that our prior affirmance was without opinion. While a PCA has no precedential value, it becomes the law of the case as to the same parties and can be used for res judicata purposes. Department of Legal Affairs v. District Court of Appeal, 5th District; State Commission on Ethics v. Sullivan, 430 So.2d 928, 932 (Fla. 1st DCA 1983). I would therefore uphold the lower court's order of dismissal on the ground of appellants' lack of standing to challenge the county's rezoning decision insofar as appellants' complaint alleges that such decision will cause injury due to traffic congestion.
The remaining allegations in count II of appellants' complaint now on review essentially allege that the county's decision will cause "parking overflow". Since parking overflow was neither alleged nor considered on appeal in Exchange I, appellants are not now barred from using it to allege a "legally recognizable interest". I therefore concur with the majority's opinion as it relates to such allegations.
I also agree with the majority in reversing the lower court's order of dismissal of count I. Count I alleges that the county's decision to decrease the number of parking spaces in the subject PUD was adopted without due notice as required by ordinance, and "otherwise violated procedural requirements for the adoption of such zoning decisions." While the complaint in Exchange I had also alleged that the county's decisions were made without due notice, those decisions concerned the initial rezoning *1228 of the parcel to PUD status. Because the decisions contested in the two cases are different, and, unlike Exchange I, there is no allegation in Exchange II that appellants waived their right to raise the notice issue, the PCA in Exchange I does not bar appellants' theory espoused under count I in the complaint before us. Under Renard v. Dade County, appellants clearly have standing as to that count.
NOTES
[1] The appellants' complaint in their first action alleged the values of their properties were threatened by economic development that would aggravate traffic congestion and create an area of economic blight.
[2] On appeal after remand, 25 Misc.2d 920, 208 N.Y.S.2d 365 (Sup.Ct. 1960), the court found that while the complaint could withstand a motion to dismiss, plaintiffs failed to prove the requisite standing at trial.