[Civ. No. 20694. First Dist., Div. One. Oct. 24, 1962.]

BALDWIN-LIMA-HAMILTON CORPORATION, Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; ALLIS-CHALMERS MANUFACTURING COMPANY, etc., et al., Real Parties in Interest.

Chickering & Gregory and Frederick M. Fisk for Petitioner.

No appearance for Respondent.

Thomas M. O'Connor, City Attorney (San Francisco), William F. Bourne, Public Utilities Counsel, Harold C. Brown, Frank M. Brown, Johnson & Stanton, Gardiner Johnson and Marshall A. Staunton for Real Parties in Interest.

SULLIVAN, J.—Petitioner Baldwin-Lima-Hamilton Corporation, hereafter referred to as Baldwin, seeks a writ of prohibition restraining the respondent superior court from taking further action in a mandamus proceeding pending therein, except such as may be necessary to deny a peremptory writ of mandate, discharge the alternative writ issued, and dissolve an injunction pendente lite.

The following background facts appear to be generally undisputed. On July 6, 1961, the purchasing department of the City and County of San Francisco, acting under the direction

of Ben Benas, purchaser of supplies of said city, issued and published contract proposal No. 12625 inviting and calling for the submission of sealed bids for the furnishing and delivery of certain equipment including turbines, governors, valves and pipes for the Canyon Generating Station at the Canyon-Cherry Power Development. Prior to the time specified for closing of bids on August 7, 1961, both Baldwin and the Allis-Chalmers Manufacturing Company, hereafter referred to as Allis, submitted sealed bids. Baldwin's bid was in the sum of $1,356,386. Allis' bid was in the sum of $1,319,105. Benas first took the position that Allis' bid, although the low bid, was invalid because it deviated from the bid invitation in certain material respects. On October 26, 1961, however, acting pursuant to section 95 of the San Francisco Charter and to section 21.9 of the Administrative Code of the city, Benas formally rejected all bids on the above-mentioned contract proposal No. 12625.[1]

On November 20, 1961, Benas issued, as a new invitation, contract proposal No. 12885 for the same equipment. Such proposal contained the following specification under the heading '' 'Place of Manufacture' '': '' 'All materials, supplies and equipment covered by this contract proposal shall be manufactured in the United States, except as otherwise provided in the Government Code of the State of California. In the event that alloy steel castings for the ''solid'' type runner required by the specifications are not produced in the United States, such castings produced outside the United States will be acceptable.' ''

In response to the above proposal and prior to the time specified for the closing of bids on December 4, 1961, three bids were submitted: (1) A bid by Allis in the sum of $1,308,555 based on the specification that the equipment, except as noted above, be manufactured in the United States. (2) A bid of Baldwin in the sum of $1,337,036 submitted on

<hr>

[1] Section 95 of said charter dealing, inter alia, with the letting of contracts by bid for the purchase of materials, supplies and equipment provided in relevant part as follows: '' '. . . Each such advertisement shall contain the reservation of the right to reject any and all bids. . . .' ''

'' 'The purchaser of supplies with the approval of the chief administrative officer . . . may reject any and all bids and readvertise for bids.' ''

Section 21.9 of the Administrative Code included within chapter 21, entitled '' 'Purchasing Procedure' '' provides in relevant part as follows: '' 'The purchaser, with the approval of the chief administrative officer, may reject any and all bids and readvertise for bids.' ''

the same basis. (3) An additional bid of Baldwin in the sum of $1,237,036 based on the furnishing of certain component parts manufactured outside the United States.[2]

On January 18, 1962, Benas announced his intention to award the contract to Baldwin upon the basis that the additional bid of Baldwin (bid No. 3 above) in the sum of $1,237,036 was the lowest and best responsible bid received. Benas concedes here that he actually made his official award of the contract to Baldwin on the above date. It appears that such action on his part was taken on the advice of the city attorney of San Francisco, Benas' counsel before us, upon the theory that the "place of manufacture" specification included in the contract proposal and set forth by us above, was illegal and therefore to be disregarded since it was in conflict with the "supremacy clause" of the Constitution of the United States (art. VI, cl. 2) and certain treaties and trade agreements.

Allis, therefore, on January 24, 1962, and before the awarded contract was certified by Harry D. Ross, the controller of the City and County of San Francisco, in accordance with applicable provisions of the city's charter, filed in the respondent superior court its "Petition for Writ of Mandate and Injunctive Relief," the pending proceedings of which we are now asked to restrain.

The petition for writ of mandate is directed against Benas and Ross and contains allegations setting forth in substance the above facts with reference to the two contract proposals, the submission of the two bids on August 7 in response to the first proposal No. 12625, the receipt of notification by Allis from Benas that its bid, although low, was invalid because it contained certain material reservations, conditions and deviations from the invitation for bids and that it was the intention of Benas to award the contract to Baldwin, the subsequent rejection by Benas on October 27 of both bids, the three bids received in response to the second proposal No. 12885 thereafter issued, the above "place of manufacture" clause and the ultimate decision of Benas to award the contract to Baldwin. So far as is pertinent here, the petition contains the following additional allegations: that Allis is a Delaware corporation, with its home office in Milwaukee, Wisconsin, organized and licensed to transact business in California, includ-

---

[2]The purchaser of supplies and the controller assert that each of the above bids should be increased by $770.

ing the City and County of San Francisco; that Benas' action in rejecting Allis' first bid on August 7 "was wrongful, illegal and unlawful" in that such bid was the lowest responsible bid received, was without reservation or deviation from the contract proposal and therefore "should have resulted in the award of said contract" to Allis; that Baldwin, in submitting on December 4, in connection with the second proposal No. 12885, its additional bid based on furnishing component parts from *without* the United States, committed a material deviation from the "place of manufacture" clause and thus the contract proposal; that Baldwin's sole purpose in submitting such a bid was to obtain a competitive advantage over other bidders and as a result Baldwin did obtain such an advantage of not less than $250,000; that the contemplated action by Benas and Ross would be arbitrary and capricious and an abuse of discretion, causing great and irreparable damage to Allis; and that Allis "is the party beneficially interested herein." The prayer of such petition was that an alternative writ of mandate issue directed to Benas and Ross, commanding them "to award the contract . . . to Petitioner as the lowest responsible bidder therefor . . . and to refrain from proceeding to award or certify said contract to Baldwin . . . or to any person other than Petitioner . . . [and] [f]or a temporary restraining order and for an Injunction Pendente Lite enjoining and restraining said respondents . . . [and all persons acting for them] from proceeding with the award or certification of the said contract . . . to Baldwin . . . or to any bidder or person other than Petitioner pending the final determination of this action." The alternative writ of mandate was issued forthwith on January 24, 1962.

On February 6, 1962, Benas and Ross, the respondents below, filed their return and answer to the alternative writ and Baldwin, upon leave of court, filed a complaint in intervention "uniting with the respondents in resisting the claims of petitioner."[3] On the same day Baldwin filed a demurrer.

Since Baldwin is an intervener on the side of the respondents Benas and Ross, its complaint in intervention is in effect an answer to Allis' petition. (Cf. *People* v. *Perris Irrigation Dist.* (1901) 132 Cal. 289, 291 [64 P. 399, 773].) Such complaint admits in general substance the background facts of the invi-

---

[3]The record does not disclose whether any answers or demurrers were filed to the complaint in intervention. (Code Civ. Proc., § 387.)

tations for bids, the specifications as to place of manufacture, the bids submitted on each contract proposal, and the proposed awarding of the contract to Baldwin on its bid submitted on proposal No. 12885; alleges that prior to the rejection of Allis' bid opened on August 7, 1961, Benas requested opinions of counsel as to the lawfulness of such bid, copies of which opinions by the public utilities counsel and by the city attorney of San Francisco are attached to the complaint as exhibits and incorporated therein; denies that Allis' bid on the second contract proposal was the lowest responsible bid; denies that by submitting its additional bid (bid No. 3 above) it committed a material deviation from the specifications; denies that the purpose or effect of such bid was to secure for Baldwin a competitive advantage; alleges in substance that Baldwin's above bid of $1,237,036 on the second contract proposal No. 12885 was the lowest and best bid received which the respondents had the right and duty to accept and certify; alleges that prior to determining to award said contract to Baldwin, Benas requested the opinion of counsel as to its lawfulness, a copy of which opinion of the city attorney of San Francisco is attached to the complaint as an exhibit and incorporated therein; and denies that Allis is a party beneficially interested. The foregoing complaint in intervention also alleges that the petition for writ of mandate does not state facts sufficient to constitute a cause of action or sufficient to constitute cause for the issuance of the writ; that the court below has no jurisdiction over the subject matter of the proceeding; and that the action of the respondents in rejecting Allis' bid on the first contract proposal and in determining to award the contract to Baldwin on the second contract proposal was predicated upon advice of their counsel. The prayer of the complaint in intervention was that Allis' petition be dismissed and the alternative writ of mandate discharged.

Baldwin's demurrer also specifies in language similar to the complaint in intervention that the petition fails to state sufficient facts and that the court below lacks jurisdiction of the subject matter.[4]

---

[4]Apparently no objection was made below to the filing by Baldwin of a demurrer as well as a complaint in intervention although the order for intervention granted leave to file only the latter. Since the legal issues raised by the demurrer are also raised by the complaint in intervention, which is actually an answer to the petition, and since such legal issues can be properly raised by an answer to the petition for writ of mandate

The return and answer of Benas and Ross is in general similarly responsive to the allegations of the petition; admits in substance the essential and, as we have pointed out, undisputed background facts; alleges that during all of the times within which such events occurred there were in effect the provisions of the San Francisco Charter and Administrative Code referred to by us above; denies, as did Baldwin, that the purpose and effect of Baldwin's accepted bid was to secure for the latter a competitive advantage over other bidders; alleges that because of the supremacy clause of the United States Constitution and certain provisions of a federal treaty, Benas "was required to treat and consider the said bid . . . as being a legal and proper bid and the lowest and best bid submitted to him"; denies that Allis was the lowest and best bidder on either contract proposal; alleges that the awarding of the contract to Baldwin is and will be in conformity to the contract proposal; and admits that Allis is a party beneficially interested. The answer and return also set forth three separately stated defenses relating to the bidding in response to the first contract proposal (No. 12625) which it is not necessary for us to detail here.

The respondent superior court reserving its ruling on the demurrer which had been argued before it, thereupon proceeded to a hearing upon the above-mentioned pleadings.[5] At the conclusion of the hearing, the court overruled the demurrer and denied Baldwin's motion to strike all of the evidence, oral and documentary. On April 26, 1962, it issued a memorandum opinion holding that the "place of manufacture" provision of contract proposal No. 12885 was in violation of the "supremacy clause" of the United States Constitution and certain trade treaties and that "[t]his illegal provision inserted in the specifications and in the contract proposal defeats the fundamental requirement in awarding public contracts that the call for bids clearly apprise pros-

(*Scott* v. *Superior Court* (1927) 83 Cal.App. 25, 29-30 [256 P. 603]), it is not necessary for us to decide whether the demurrer was properly filed below.

[5]In the proceedings for a writ of prohibition now before us, the parties have admitted that the demurrer was argued on February 6, and taken under submission, that further hearings for the taking of testimony were held on February 7, 8, 16, 28 and March 14, 1962, and that on April 18, 1962, in chambers, the court announced its ruling on the demurrer and motion to strike. The record before us does not disclose any minute or written orders in reference to the above.

pective bidders of the terms, conditions and specifications in such a manner as to promote free, open, honest, competitive bidding on equal terms equally open to all prospective bidders. No contract can be awarded on Contract Proposal . . . [No. 12885] as published and issued on or about November 20, 1961." The opinion further stated therein that the petition for a peremptory writ of mandate compelling Benas to award the contract to Allis on its bid "is hereby denied and the alternative writ of mandate . . . hereby dissolved"; and that Benas "be and he is hereby enjoined pendente lite, from awarding a contract" to Baldwin on either of its bids "or to any other person, firm or corporation on that certain contract proposal . . . [No. 12885]. . . ."

Thereupon, and before any additional proceedings were taken in the court below, the petition for writ of prohibition now before us, was filed with the Supreme Court on May 25, 1962, and thereafter transferred to this court on June 7, 1962. We granted an alternative writ of prohibition on June 21, 1962. A return and answer to the alternative writ has been filed by Allis and a separate answer and return filed by Benas, Ross and the City and County of San Francisco, all of whom have been named respondents in the instant proceedings.

As it is stated in *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 429-430 [333 P.2d 745] : "The writ of prohibition is an appropriate remedy to arrest the proceedings of a court when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court are without or in excess of its jurisdiction. (Code Civ. Proc., §§ 1102, 1103.) The absence of another adequate remedy was determined by this court when we granted an alternative writ. (Cf. *Atkinson* v. *Superior Court,* 49 Cal.2d 338, 342 [316 P.2d 960] ; *Bowles* v. *Superior Court,* 44 Cal.2d 574, 582 [283 P.2d 704].) ▮ To permit the issuance of prohibition it is not necessary that there be a lack of jurisdiction over the subject matter or parties in the fundamental sense but only that there be a want or excess of the power of the court as defined by statute or by rules developed and followed under the doctrine of *stare decisis.* (*Tide Water Assoc. Oil Co.* v. *Superior Court,* 43 Cal.2d 815, 821 [279 P.2d 35] ; *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280, 287 et seq. [109 P.2d 942, 132 A.L.R. 715].)" (See also *City & County of San Francisco* v. *Superior Court* (1959) 53 Cal.2d 236 [1 Cal.Rptr. 158, 347 P.2d 294].)

Baldwin contends before us that Allis' petition for a writ of mandate filed in the respondent court does not state facts sufficient to constitute cause for the issuance of a writ of mandate or to entitle Allis to incidental injunctive relief; that as a result, any further proceedings in said court, except such as may be necessary to deny the peremptory writ of mandate and discharge the alternative writ, are in excess of that court's jurisdiction; and that more specifically, the action which the respondent court has announced it intends to take in preventing Benas from awarding the contract in question to Baldwin or any other bidder by issuing an injunction pendente lite and in addition in holding that the bid call is illegal and that therefore no contract can be awarded pursuant thereto, is and will be in excess of the court's jurisdiction.

In the foregoing position, Baldwin is joined by Benas, Ross and the City and County of San Francisco who urge that the bid call was and is legal and that the respondent court should be restrained from taking action of any kind which will prevent the awarding of the contract to Baldwin.

Allis, on the other hand, takes the position that the intended action of the court below is not in excess of its jurisdiction and that the peremptory writ of prohibition here sought should be denied.

We therefore proceed to examine the proceedings below and to determine whether the judicial action announced to be taken therein is in excess of the jurisdiction of the respondent superior court.

It is elementary that the remedy of mandamus which was sought below issues only "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust or station" (Code Civ. Proc. § 1085) upon the petition "of the party beneficially interested" (Code Civ. Proc. § 1086) and will not lie to control discretion conferred upon a public officer or agency. (*Lindell* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4] ; *Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659].) It is also well settled, and the parties before us admit, that two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent (*Faulkner* v. *California Toll Bridge Authority, supra*; *Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 664 [192 P.2d 17] ; *Browning* v. *Dow* (1923) 60 Cal.App. 680, 682 [213 P. 707]) ; and (2) a clear,

present and beneficial right in the petitioner to the perform-
ance of that duty (*Parker* v. *Bowron* (1953) 40 Cal.2d 344,
351 [254 P.2d 6]). (See generally 3 Witkin, Cal. Procedure,
pp. 2520 et seq.; 32 Cal.Jur.2d, Mandamus, § 6, p. 122.)

So far as is pertinent here, the petition for writ of mandate
alleges that Benas issued the second contract proposal No.
12885 on November 20, 1961;[6] that its specifications included
the "place of manufacture" provision above-mentioned; that
in response to the proposal Allis submitted one bid in the sum
of $1,308,555 and Baldwin submitted two bids, one for
$1,337,036 and an "alternative proposal" in the sum of
$1,237,036 "based upon the furnishing of component parts
procured outside the United States"; that Allis' bid "was the
lowest responsible bid submitted in accordance with the Con-
tract Proposal and the specifications"; that Baldwin, in sub-
mitting its alternative bid "committed a material deviation
and variance" from the "place of manufacture" specifica-
tions; that although Allis demanded of Benas that he award
the contract to it as the lowest responsible bidder, the latter
announced his intention to award the contract to Baldwin
on the basis that its alternate bid was the lowest and best
responsible bid received.

As already set forth by us in detail, the respondents Benas
and Ross filed an answer and return and Baldwin filed a
complaint in intervention and demurrer to meet Allis' petition.
Since Baldwin's complaint was in legal effect an answer
(*People* v. *Perris Irrigation Dist., supra,* 132 Cal. 289, 291)
all of the other parties actually answered the petition.
Attached to Baldwin's complaint in intervention (answer)
are three exhibits consisting of three opinions of Benas' counsel
including the city attorney's opinion of December 29, 1961,
the authenticity of which exhibits has not been disputed on
this record.

In determining whether Allis' petition filed in the
respondent superior court shows the two basic ingredients
requisite for mandamus and therefore whether said court's
intended action is in excess of its jurisdiction, we are entitled
to consider the above pleadings of the opposite parties and
the exhibits attached thereto. Any defects in Allis' petition
may be aided or cured by averments in the above pleadings of

---

[6]We do not deem it necessary to consider the first contract proposal of
July 6, 1961, since Benas, as authorized by the San Francisco Charter
and Administrative Code, rejected all bids submitted in response thereto.

the opposite parties. (2 Witkin, Cal. Procedure, pp. 1511-1512; see 39 Cal.Jur.2d, Pleading, §§ 355-356, pp. 482-483 and cases therein cited.)

We note that Baldwin in its petition for a writ of prohibition filed with this court alleges, and Allis in its return and answer thereto admits, that Baldwin's demurrer, specifying insufficiency of facts and lack of jurisdiction, was argued prior to the taking of evidence but ruling thereon reserved by the court below, that Baldwin maintained throughout the subsequent hearings that the demurrer should be sustained, and that at the close of the testimony Baldwin's motion to strike all the evidence, oral and documentary, was denied and its general demurrer thereupon overruled. This is confirmed by the following statement of counsel for Baldwin found in the transcript of the proceedings below which has been lodged with this court: ''Before I commence any testimony with this witness of mine, the Court will recall that I have urged and still urge to the Court that the Court has no jurisdiction in this case, based on the pleadings filed with the Court, and I have a demurrer and I am still urging that demurrer and I am not waiving it, it is a jurisdictional question anyway. And I am calling a witness at this time.''

On oral argument before us, counsel for Baldwin contended that in the light of the foregoing record we should not consider anything beyond Allis' petition for a writ of mandate. We do not agree. Baldwin did not stand on its demurrer. As we have already shown, it filed simultaneously with its demurrer a complaint in intervention which was in legal effect an answer. By so doing it permitted the doctrine of aider to come into play. As in the case of a complaint, if Allis' petition is defective or lacks an averment of any essential fact, it may be aided or cured by the averments of the answers filed thereto, even though a demurrer to the sufficiency of the petition, filed by one of the parties, has been erroneously overruled. (Cf. *Daggett* v. *Gray* (1895) 110 Cal. 169, 172 [42 P. 568]; *Kreling* v. *Kreling* (1897) 118 Cal. 413, 420 [50 P. 546]; *Savings Bank of San Diego* v. *Barrett* (1899) 126 Cal. 413, 418 [58 P. 914]; *Bledsoe* v. *Stuckey* (1920) 47 Cal.App. 95, 101-102 [190 P. 217]; *Mann* v. *Mueller* (1956) 140 Cal.App.2d 481, 484 [295 P.2d 421].)

The relief sought by Allis in the respondent court is twofold. In the prayer of its petition Allis seeks a writ of mandate commanding Benas and Ross (1) to award the contract to

Allis as the lowest responsible bidder, and (2) to refrain from proceeding to award or certify the contract to Baldwin or to any person other than Allis.

Clearly Allis' petition, even when considered with the other pleadings, does not establish any enforceable duty on the part of Benas and Ross to award the contract to Allis. True, the petition alleges that Allis' bid was the ''lowest responsible bid submitted in accordance with the Contract Proposal and specifications'' and that Allis was ''in fact the lowest and best responsible bidder.'' But these allegations are purely conclusionary, the apparent theory of the pleader being that the alternate low bid of Baldwin based on furnishing foreign components should be disregarded, despite the fact that it was accepted by Benas in the exercise of his discretion, and the acceptance of the next lowest bid—Allis' bid—be ordered by the court below quite apart from any discretion in Benas to accept or reject any bid. It is not, and of course could not be, alleged that Benas was under a duty to accept any bid submitted. On the contrary, under the Charter and Administrative Code of San Francisco, he could reject any and all bids.

In *Judson Pacific-Murphy Corp.* v. *Durkee* (1956) 144 Cal. App.2d 377 [301 P.2d 97], the petitioner Judson, the second lowest bidder, brought a proceeding in mandamus against the director of public works to restrain the latter from awarding a bridge contract to the lowest bidder upon the claim that such bidder was not properly qualified and licensed and to compel the director to award the contract to Judson as the next lowest, qualified and responsible bidder. In affirming the denial of such relief, this court, speaking through Mr. Justice Peters, said: ''It will be noted that appellant in its petition prays that respondent be ordered to reject intervener's bid and be ordered to award the contract to Judson. It is quite clear that neither the trial court nor this court has the power to order respondent to award the contract to Judson, even if the contract awarded to United States Steel Corporation were a nullity. This is so because the notice to contractors expressly notified prospective bidders that the Director of Public Works reserved the right to reject any or all bids. . . .

''It is apparent that were the court to order respondent to award the contract to Judson as the next lowest qualified bidder (assuming, contrary to the fact, that United States Steel Corporation was not qualified), it would be substituting the court's judgment and discretion for those of respondent.

Clearly, the call for bids and the law confers on the director the duty of exercising his judgment as to whether it is in the best interests of the state to award the contract to the lowest bidder. The lowest qualified bidder has no legal right to compel the acceptance of his bid. (*Charles L. Harney, Inc.* v. *Durkee,* 107 Cal.App.2d 570 [237 P.2d 561, 31 A.L.R.2d 457] ; see also *Stanley-Taylor Co.* v. *Board of Supervisors,* 135 Cal. 486 [67 P. 783] ; *Laurent* v. *City & County of San Francisco,* 99 Cal.App.2d 707 [222 P.2d 274].)'' (144 Cal.App.2d at pp. 381-382.)

So, in the case before us, the respondent superior court had no power to order Benas to award the contract to Allis, even if it is assumed that Baldwin's low bid should be disregarded. Benas had the authority to reject any and all bids and in the exercise of his discretion to decide whether to award the contract to the lowest bidder, whoever that might be. He was under no legal compulsion to award it to Allis.

We are mindful of the fact that in the present posture of this case, the respondent superior court has not indicated an intention to compel the award of the contract to Allis and has actually indicated a contrary intention by stating in its memorandum opinion that it has denied or will deny the peremptory writ of mandate and discharge the alternative writ. Baldwin, of course, makes no plea before us to arrest such judicial action obviously favorable to it. However we have considered the foregoing question of the trial court's power to order an award of the contract to Allis because it has been presented to us by the parties and because we feel it is necessary to a full determination as to whether the proceedings below are in excess of such court's jurisdiction as that term relates to proceedings in prohibition.

We now turn to the second aspect of the relief sought in the court below and proceed to discuss whether such court, while admittedly having no power to compel an award of the contract to Allis, has the power to restrain Benas and Ross from proceeding to award or certify the contract to Baldwin or any other person.

The resolution of this question turns upon the legality and validity of the city's contract proposal of November 20, 1961. The pleadings establish that all three bids which generate the instant controversy were submitted to Benas in response to such proposal and that such proposal included the ''place of manufacture'' provision set out by us above. This provision

required that the materials, supplies and equipment furnished under the proposal " 'be manufactured in the United States, except as otherwise provided in the Government Code of the State of California.' " It is not disputed that the above provision was included in the proposal or bid call in order to comply with the California Buy American statute (Gov. Code, § 4303[7]). The above provision in the bid call however contained an express exception to the effect that if certain alloy steel castings for runners required by the specifications were not produced in the United States, they would be acceptable from outside the United States.

The record shows that all of the three bids involved were presented on the basis that the so-called runners would be manufactured in Switzerland since they were not ordinarily manufactured within the United States. All bids therefore took advantage of the permissible exception created by the "place of manufacture" provision. It is also established by the record that Allis' bid in the sum of $1,308,555 (bid No. 1 above) and Baldwin's bid in the sum of $1,337,036 (bid No. 2 above) were both submitted on the basis that all materials and equipment would be manufactured in the United States, except of course the runners which were to be from Switzerland. Both bids were therefore responsive to the bid call in all respects including the specifications prescribed as to place of manufacture. In comparison, Allis' bid (bid No. 1) was the lower in amount. The record also establishes that Baldwin's separate bid (bid No. 3) in the amount of $1,237,036 which Benas accepted, was based on furnishing, in addition to the runners from Switzerland, certain parts such as governors, valve controls and light weldment which would be manufactured either in Japan or Canada. In this respect it is clear that such bid was not responsive to the place of manufacture provision of the bid call.

However, it is also clear, under the authorities relied upon by the city attorney of San Francisco in his opinion rendered to Benas, adopted by the respondent superior court

[7]Section 4303 provides: "The governing body of any political subdivision, municipal corporation, or district, and any public officer or person charged with the letting of contracts for (1) the construction, alteration, or repair of public works or (2) for the purchasing of materials for public use, shall let such contracts only to persons who agree to use or supply only such unmanufactured materials as have been produced in the United States, and only such manufactured materials as have been manufactured in the United States, substantially all from materials produced in the United States."

in its memorandum opinion, recognized by Baldwin and not disputed by Allis in their arguments before us, that the California Buy American statute and the above "place of manufacture" clause in the bid call of November 20, 1961, are unenforceable in the situation now before us since they conflict with certain treaties and agreements and thus with the " 'supreme law of the land.' "

At Geneva on October 30, 1947, the United States and 22 other nations entered into a "General Agreement on Tariffs and Trade" (61 Stat., part 5) which for brevity we will hereafter refer to as GATT. Canada was an original signatory thereto. Japan became a signatory thereto effective September 10, 1955.[8]

Paragraph 2 of article III of part II of GATT (61 Stat., part 5, p. A18) provides: "The products of the territory of any contracting party imported into the territory of any other contracting party shall be accorded treatment no less favourable than that accorded to like products of national origin in respect of all laws, regulations and requirements affecting their internal sale, offering for sale, purchase, transportation, distribution, or use. . . ."

Paragraph 5 of article III of part II (61 Stat., part 5, p. A19) provides: "The provisions of this Article shall not apply to the procurement by governmental agencies of products purchased for governmental purposes and not for resale or use in the production of goods for sale, . . ."

▉ Under GATT therefore the products of Canada and Japan imported into the United States must be treated no less favorably than like products of such nation of destination. The exception contained in paragraph 5, which we quote immediately above, is not operative in the instant situation since the turbines and other equipment are for use in the generation of electric power for resale and hence for "use in the production of goods for sale." Electricity is a commodity which, like other goods, can be manufactured, transported and sold. (See *Terrace Water Co.* v. *San Antonio Light & Power Co.* (1905) 1 Cal..App. 511, 513 [82 P. 562].)

The United States Constitution provides in article VI thereof that ". . . Treaties made . . . under the Authority

---

[8]Pursuant to Protocol of Terms of Accession of Japan to GATT dated at Geneva June 7, 1955, and "entered into force" September 10, 1955. (See Vol. 6 United States Treaties and Other International Agreements, p. 5833. Publication of U. S. Printing Office, 1956.)

of the United States, shall be the supreme Law of the Land; . . .'' When a state statute conflicts with any such treaty, the latter will control. (*Clark* v. *Allen* (1947) 331 U.S. 503 [67 S.Ct. 1431, 91 L.Ed. 1633, 170 A.L.R. 953]; *United States* v. *Pink* (1942) 315 U.S. 203 [62 S.Ct. 552, 86 L.Ed. 796].) Compacts and similar international agreements, such as GATT, which are negotiated and proclaimed by the President are ''treaties'' within the above supremacy clause of the Constitution. (*United States* v. *Belmont* (1937) 301 U.S. 324, 330-332 [57 S.Ct. 758, 81 L.Ed. 1134].)

The written opinion of the city attorney of San Francisco to Benas under date of December 29, 1961, which we find attached as an exhibit to Baldwin's complaint in intervention, follows the above reasoning and authorities to hold that the foreign components proposed to be obtained by Baldwin from Canada and Japan were protected by GATT and that the Japanese components were also accorded '' 'most-favored-nation treatment' '' under the '' 'Treaty of Friendship, Commerce and Navigation,' '' signed at Tokyo April 2, 1953. It was in this opinion that the city attorney advised Benas that the California Buy American statute was superseded by the above treaties and that Benas was required to disregard the factor that Baldwin's low bid (bid No. 3) did not conform to the specifications set forth in the ''place of manufacture'' provision.[9]

 We agree that under the foregoing authorities the ''place of manufacture'' provision contained in the November 20, 1961, bid call has no operative effect in the instant case to restrict or preclude the furnishing of material or equipment produced in Canada or Japan. The result therefore is a nullification of the provision as effectively as if it had not been included in the bid call in the first place. It is superseded, or in other words replaced, by the treaty provisions.

What, if any, effect therefore do the foregoing conclusions have upon the contract proposal or bid call itself which clearly prescribed that bids submitted in response thereto should comply with ''place of manufacture'' specifications now held to be superseded? Baldwin and the other parties hereto who join with it maintain that the original bid call

---

[9]The city attorney also relied upon the opinion found in 34 Ops. Cal. Atty. Gen. 302 which, in a generally similar situation, reaches the same conclusions with respect to the GATT agreement and the supremacy clause.

and advertising procedure are in no way affected. Baldwin urges that the treaties are the supreme law of the land which "is by operation of law a necessary part of the terms and conditions of every contract, and, hence, of any contract specifications" issued by Benas. The city attorney in his letter of opinion to Benas referred to by us above disposes of the problem of noncompliance with the city's own specifications by taking the position that the "treaty provisions must as a matter of law and to the extent to which applicable be read into the city's proposal as part and parcel thereof." In the instant proceeding before us, the city and its officials offer the explanation that, although Baldwin's low bid did not propose to furnish materials of American manufacture as the city itself specified, such bid was "validated by the interposition (upon the 'Buy American' clause in the city's bid proposal) of the 'supremacy' clause of Article VI of the U. S. Constitution." In plain language, the gist of all of the foregoing arguments is this: the bid call may not mean what it says when specifying American goods, but it is still a valid proposal because the bidder can always determine for himself what has to be read into it. This is indeed a new concept in the letting of public contracts.

It is a long and well-established rule that where municipal contracts are required to be let upon public bidding, the proposals and specifications inviting such bids must be sufficiently detailed, definite and precise so as to provide a basis for full and fair competitive bidding upon a common standard and must be free of any restrictions tending to stifle competition. (43 Am.Jur., Public Works and Contracts, § 36, p. 777; 63 C.J.S., Municipal Corporations, § 998, p. 573; 10 McQuillin, Municipal Corporations, § 29.30, p. 268.) The San Francisco Charter required such full and fair competitive bidding in the instant case.

In conformity with the mandate of section 95 of the charter, the respondent Benas in advertising for bids incorporated in his proposal a specific requirement that (except for the castings for runners) " [a]ll materials, supplies and equipment . . . shall be manufactured in the United States, except as otherwise provided in the *Government Code* of the State of California." (Emphasis added.) The plain meaning of this language is that the bid must be based on goods of American manufacture or it will not be accepted. The bidder is apprised

of certain possible exceptions in the Government Code (not applicable to the problem at hand), the reference apparently being to sections 4300-4305. Nothing contained therein or in any other part of the Government Code could in any way inform the bidder of exceptions arising because of treaty provisions. Nothing in the contract proposal states that the "buy American" specifications obtain except, as for example, "as otherwise provided in certain treaties and general trade agreements of the United States." On the contrary, the bidder is in effect told that *all* materials must be of American manufacture, whether they come within favorable treatment provisions of treaties or not. Apart from the runners, the bid call requires American manufactured goods without exception.

We are of the opinion that the "place of manufacture" provision in the bid call of November 20, 1961, failed to afford a basis for full and fair competitive bidding upon which the contract in question could be legally awarded. It cannot be reasonably concluded that prospective bidders could infer from the specifications of the bid call that, despite its clear language to the contrary, they could submit acceptable bids covering materials of foreign manufacture. It is a reasonable assumption that the clear and certain language of the bid call would indeed have the opposite result and would deter persons from submitting bids covering goods of foreign manufacture, thus reducing the number of bidders and defeating the real objectives of competitive bidding. (See generally 43 Am. Jur., Public Works and Contracts, § 26, p. 767.)

We find no merit in Baldwin's argument that specifications which are insufficient to secure full and fair competitive bidding can be corrected or improved by importing therein by legal implication ("reading into them") provisions upon which the specifications are completely silent. While *Calpetro Producers Syndicate* v. *C. M. Woods Co.* (1929) 206 Cal. 246, 252 [274 P. 65], and *Standard Box Co.* v. *Mutual Biscuit Co.* (1909) 10 Cal.App. 746, 750 [103 P. 938], cited by Baldwin, state the established rule that terms implied by law become as much a part of a contract as those expressly written therein, neither case applies such principle to bidding specifications in the way here urged by Baldwin. Nor is there merit in the argument of the other respondents joined with Baldwin that the bid call is valid when made since it cannot be then known that foreign products will be involved and the conflict between the bid call and the treaties thus provoked. The simple answer

to this is that the bid call plainly specifies that foreign products must not be used.

To insist, as the city and those joining with it do, that the bidder must read the treaty provisions into the bid call is absurd and unrealistic. ▆▆▆ Properly conducted competitive bidding should not compel a bidder to question the clear language of the proposal and to search out, examine and construe various public documents upon the contingency that they may in some way affect it. This would require the bidder to become to a great extent a lawyer, in some degree a judge and, perhaps, in no small way a clairvoyant.

▆▆▆ We therefore hold that the ''place of manufacture'' provision in contract proposal No. 12885 issued by Benas on November 20, 1961, is, in the instant case, illegal and invalid as being in conflict with the aforementioned treaties and trade agreements of the United States, that such provision cannot be cured or corrected by importing therein by legal implication the pertinent clauses of such treaties and agreements, and that, as a result, it can be reasonably concluded by the respondent court that such provision is further invalid as being insufficient in the instant case to provide for full and fair competitive bidding upon a common standard.

▆▆▆ The awarding of a contract by a public official pursuant to specifications which are illegal and invalid and which fail to provide for full and fair competitive bidding, is, we think an abuse of discretion. It is within the power of the respondent superior court to determine whether or not an abuse of discretion exists in the instant case. ▆▆▆ While mandamus will not lie to control the discretion exercised by a public officer or board (*Lindell* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303; *Faulkner* v. *California Toll Bridge Authority, supra,* 40 Cal.2d 317) it will lie to correct an abuse of discretion by such officer or board. (*Inglin* v. *Hoppin* (1909) 156 Cal. 483, 491 [105 P. 582]; *Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383]; *Roussey* v. *City of Burlingame* (1950) 100 Cal. App.2d 321, 326 [223 P.2d 517]; *Bess* v. *Park* (1955) 132 Cal. App.2d 49, 55 [281 P.2d 556]; *Palmer* v. *Fox* (1953) 118 Cal. App.2d 453, 457 [258 P.2d 30]; *Naughton* v. *Retirement Board of San Francisco* (1941) 43 Cal.App.2d 254, 257 [110 P.2d 714]; see generally 17 McQuillin, Municipal Corporations, § 51.18.)

The issue of the abuse of discretion on the part of Benas in awarding and on the part of Ross in certifying the contract to Baldwin on its so-called alternative bid has been properly raised in the court below. As we have pointed out, all of the essential facts bearing upon the submission of the three bids and upon the legality and validity of the place of manufacture provision are established by the pleadings and exhibits attached thereto. In addition, Allis has alleged that the sole purpose of Baldwin in submitting its alternative bid "was to give it a competitive advantage over any and all bidders complying with the provisions of the specifications, . . ." This issue has been raised by the denials of the other parties. Finally Allis alleges that "unless restrained" by the respondent court Benas and Ross will proceed with the award of the contract to Baldwin "in conflict with and in disregard of the provisions of the Charter and ordinances of the City and County of San Francisco, the provisions of the Contract Proposal and the specifications; that such action on the part of said respondents in certifying and awarding said contract would be arbitrary and capricious and *an abuse of discretion, . . .*" (Emphasis added.) While the last language is conclusionary, it is not fatal since the essential facts of the controversy are found in the pleadings and it does significantly point up that the issue of the legality of the bid call and of Benas' abuse of discretion in proceeding to make an award pursuant to it was before the court. Contrary to Baldwin's claim, the respondent court was not "creating and determining issues not raised by the parties or their pleadings."

We therefore hold that it is within the power of the respondent court to issue a writ of mandate to correct "an abuse of discretion" commanding Benas and Ross according to the prayer of the petition to refrain from proceeding to award or certify said contract to Baldwin or to any other person.

Allis was peculiarly affected by such alleged abuse of discretion. It was the only other bidder. Of the two bids which were responsive to all of the bidding specifications including those referring to place of manufacture, Allis' bid was the lower. Benas did not reject any of the bids submitted. His decision to disregard the place of manufacture provision therefore had a direct and injurious result on Allis. If relief is granted below, Allis will have the opportunity to bid on a new invitation which presumably will provide full and fair competitive bidding. Thus the granting of the writ will sub-

serve and protect Allis' interest and if a new bid call is made will be beneficial to Allis. (*Parker* v. *Bowron, supra,* 40 Cal. 2d 344, 351.) We are of the view therefore that Allis is a "party beneficially interested" and as such entitled to invoke the remedy of mandamus. Indeed the city and its officials admit this.

We wish to make clear that we do not say that the remedy invoked should issue. The propriety of its issuance is not before us. Our holding is that the respondent court has the power to issue the writ and that such action on its part is not without or in excess of its jurisdiction.

Finally, we point out that the record before us is unclear in certain important respects. While the respondent court states in its memorandum opinion that the bid call is illegal and that no contract can be awarded on it, it also states that Allis' petition for a peremptory writ of mandate compelling Benas "to award a contract to petitioner on its bid 'A' [bid No. 1 above] is hereby denied and the alternative writ . . . is hereby dissolved." Since the parties have not brought before us the minutes of the court below, we have no evidence that the foregoing and other language concluding the opinion are actually minute orders of the court. A memorandum opinion is not itself the court's decision or judgment. (*De Cou* v. *Howell* (1923) 190 Cal. 741, 751 [214 P. 444]; *Lord* v. *Katz* (1942) 54 Cal.App.2d 363, 367 [128 P.2d 907].) The findings of fact and conclusions of law constitute the decision of the court. (Code Civ. Proc., § 632; *De Cou* v. *Howell, supra.*) Findings of fact are necessary in a mandamus action, unless waived. (Code Civ. Proc., § 1109; *Davis* v. *State Board of Optometry* (1939) 35 Cal.App.2d 428, 434 [95 P.2d 959].) In the instant case certain factual issues were presented to the court below. In addition, Baldwin alleges in its petition filed with us and Allis admits that special findings of fact and conclusions of law have been demanded but not as yet submitted. All of the foregoing points up the fact that although the respondent court is alleged to have proposed certain judicial action, it has not yet made its decision.

We note that the court orders or will order that the peremptory writ compelling Benas to award the contract to Allis will be denied. This is in conformity with our views previously expressed herein. It is not clear to us whether or not the respondent will issue a peremptory writ restraining Benas

from awarding the contract to Baldwin or anyone else. This we have shown would be within its powers. No mention is made of this phase of the relief which is sought in Allis' petition. Instead the court indicates that it orders or will order Benas enjoined pendente lite from awarding the contract to Baldwin or any other person. The opinion does not indicate the nature of the "lis" that will be "pending." In addition, while the court states and all parties concede that it will hold that "[n]o contract can be awarded on Contract Proposal . . . [No. 12885]," the court's opinion does not indicate how such holding will be translated into and implemented by an enforceable judgment.

Our foregoing observations are not intended to be and should not be construed as critical of the court below, which was prevented from completing its decision by the instant proceeding in prohibition. It may be that the court contemplated a writ of mandate consonant with our present views. On the other hand, it may be that the court intended permanent relief of an injunctive nature with the injunction pendente lite as auxiliary thereto. There is no indication in the record that the court intends to use a permanent injunction rather than mandate to enforce its ruling that no contract can be awarded on the bid call. We therefore do not feel called upon to determine whether such type of relief would be within the court's powers.[10] We assume that the court will not exceed its jurisdiction in this respect.

The alternative writ of prohibition is discharged and the petition for a peremptory writ is denied.

Bray, P. J., and Salsman, J.,* concurred.

The petitions of the petitioner and the real parties in interest for a hearing by the Supreme Court were denied December 19, 1962.

---

[10]As an illustration, in *Cullinan* v. *Superior Court* (1938) 24 Cal. App.2d 468, 475 [75 P.2d 518, 77 P.2d 471], it is stated by the Supreme Court upon its denial of a hearing that "since the superior court has jurisdiction to entertain the proceeding in *mandamus* pending before it, that court has the power to decide all questions properly presented to it in such a proceeding, and any limitation placed on that power in the opinion and order denying the writ of prohibition was inappropriate."

*Assigned by Chairman of Judicial Council.