[Civ. No. 34372. Second Dist., Div. One. May 14, 1969.]

CITY COUNCIL OF THE CITY OF BEVERLY HILLS et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GENE HARMAN et al., Real Parties in Interest.

878

Allen Grimes, City Attorney, Colin Lennard, Assistant City Attorney, Monteleone & McCrory and Darrell P. McCrory for Petitioners.

Cox, Castle & Nicholson and George M. Cox as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Richards, Watson & Hemmerling and Richard Richards for Real Parties in Interest.

THOMPSON, J.—Real parties in interest (Harman) filed a petition for writ of mandate and for injunction in the superior court seeking to overturn the award of a public contract for the "rehabilitation" of the Coldwater reservoir of the City of Beverly Hills to Rex W. Murphy, Inc. (Murphy) after Murphy had undertaken work upon the contract. The petition alleges that the city prepared a solicitation to bid and specifications of the work to be performed. The contract bid documents contained the following language: "A bidder must be licensed in accordance with the provisions of Section 7000 through 7145, inclusive, of the Business and Professions Code. . . . Before submitting bids, contractors shall be licensed in accordance with the provisions of Section 7000 through 7145, inclusive, of the Business and Professions Code. . . ." The petition states also that Harman was the low bidder and Murphy the second lowest bidder and that on January 21, 1969, the respondent City Council of Beverly Hills adopted an ordinance in the form attached as an exhibit to the petition. The ordinance recites that while Harman was the low bidder, the water manager-chief engineer of the city had advised the council that a letter had been received from the office of the California Registrar of Contractors in Sacramento stating that a "General Contractor's License, Class A," is required to bid and perform the job and that Harman possessed only a General Building Contractor's license. The ordinance recites, further, that the council finds that Harman "did not qualify as an eligible bidder by reason of its failure to then possess a General Engineering Contractor's License Class A" and in addition that "based on the quality, service, fitness and capacity to meet the particular requirements of the City the low bidder . . . is less qualified to perform the Coldwater Reservoir Rehabilitation Project than the next low bidder . . . ." The ordinance awards the contract to Murphy.

The petition alleges that the action of the council with respect to the award was "arbitrary, capricious, unreasonable, an abuse of discretion, contrary to the requirements of law,

and was null and void.'' The factual support for the conclusionary statements of invalidity consists of allegations that at the time of the bid Harman possessed a General Building Contractor's License and at the time of the award of the contract Harman also had a General Engineering Contractor's License Class A of which the council had been informed prior to the award. There is the further allegation on information and belief that the information from which the council concluded that Harman was less qualified than Murphy was obtained from biased and unknowledgeable sources. The petition states also that Harman had not been informed of the ''content of the allegations as to his competency'' and had not been given the opportunity to rebut them.

The petition prays that a peremptory writ issue from the superior court directing the respondents in the trial court to cease all action and payment pursuant to the award of the contract to Murphy, and requiring that funds already paid on the contract be repaid to the city. It also seeks a declaration that the city's contract with Murphy is void. A demurrer and an answer denying the charging allegations of the petition were filed.

On March 3, 1969, Harman moved in the trial court for a peremptory writ of mandate and for injunctive relief essentially in the terms of the prayer of the petition. Declarations for and in opposition to the motion were filed. The trial court without evidence heard argument on the motion[1] and on March 4, 1969, issued its Minute Order ''Motion and petition are granted. LET WRIT ISSUE.'' While findings of fact were duly requested, none had been filed and the court had not filed its judgment at the time we issued our alternative writ on April 10, 1969.

On March 11, 1969, petitioners filed the petition for writ of prohibition which is now before us claiming that the superior court is acting in excess of its jurisdiction. The factual support for petitioners' contention of action in excess of jurisdiction by the trial court consists of allegations of the license requirements for bidding upon the contract, the recitals in the ordinance and a statement of the urgency of the matter. We treated the proceeding as essentially in mandamus and on April 10, 1969, issued our alternative writ accordingly. Harman then filed a demurrer and answer. He resists the peremp-

---

[1]The record does not disclose whether the declarations were formally received in evidence. Petitioners asserted no objection to this procedure in the trial court and do not claim jurisdictional error based upon it in their petition to this court.

tory writ upon the grounds that: (1) the petition is premature in that the trial court has not filed its findings of fact or judgment; (2) appeal is an adequate remedy at law which bars the issuance of a prerogative writ; (3) the petition does not raise jurisdictional error of the trial court or establish an abuse of discretion by that court; and (4) the actions of the City Council of Beverly Hills in awarding the contract to Murphy were void. We conclude that petitioners' position is sound and that the contentions of the real parties in interest (Harman) are not.

### PROPRIETY OF PREROGATIVE WRIT PRIOR TO FINDINGS AND JUDGMENT—ADEQUACY OF APPEAL

██ Real parties in interest contend that this proceeding for extraordinary writ is foreclosed in that the trial court has not yet made its findings of fact or rendered its judgment which when filed may then be tested on appeal. The contention is overly broad. ██ While the lack of a final judgment in the trial court might under appropriate facts justify an exercise of our discretion in a fashion denying an alternative or peremptory writ, it does not per se prevent the issuance of such a writ when otherwise called for by the facts. ██ ''The writ of prohibition is an appropriate remedy to arrest the proceedings of a court when there is not a plain, speedy, and adequate remedy in the ordinary course of the law and when the proceedings of the court are without or in excess of its jurisdiction as that term is used in relation to prohibition.'' (*City & County of San Francisco* v. *Superior Court*, 53 Cal.2d 236, 243 [1 Cal.Rptr. 158, 347 P.2d 294]; see also *Hagan* v. *Superior Court*, 53 Cal.2d 498 [2 Cal.Rptr. 288, 348 P.2d 896]; *City Council of the City of Santa Monica* v. *Superior Court*, 204 Cal.App.2d 68 [21 Cal.Rptr. 896].) The same principle applies to a writ of mandate. *Baldwin-Lima-Hamilton Corp.* v. *Superior Court*, 208 Cal.App.2d 803 [25 Cal.Rptr. 798] relied upon by Harman is distinguishable in that there the Court of Appeal had not been furnished with the minute order of the trial court upon which its eventual judgment would be based and was consequently unable to determine whether that judgment would exceed the court's jurisdiction (208 Cal.App.2d 803, 825).

██ We conclude that the case at bench is one in which we properly should exercise the power enunciated in *City & County of San Francisco* v. *Superior Court, supra*. It is uncontroverted that the action of the trial court if taken will

precipitously suspend work upon an important public contract the performance of which is well along. That circumstance is, in our judgment, reason enough for us to inquire into the jurisdiction of the court to take the action. It is reason enough also for us to determine that remedy by appeal is inadequate. (See *Hagan* v. *Superior Court,* 53 Cal.2d 498 [2 Cal.Rptr. 288, 348 P.2d 896] ; *Crittenden* v. *Superior Court,* 61 Cal.2d 565 [39 Cal.Rptr. 380, 393 P.2d 692] ; *Corona Unified Hospital Dist.* v. *Superior Court,* 61 Cal.2d 846, 850 [40 Cal. Rptr. 745, 395 P.2d 817] ; *Berg* v. *Superior Court,* 181 Cal.App. 2d 565 [5 Cal.Rptr. 324].) We note, also, that in the period of more than 30 days from the time of the superior court minute order until the issuance of our alternative writ no findings of fact or judgment were filed. Petitioners have thus been placed in a situation where, while time is of the essence, there is nothing from which they can appeal.

### JURISDICTIONAL ERROR

 Harman argues that the petition here before us at most raises error on the part of the superior court and fails to allege factually the lack of jurisdiction or abuse of discretion which permits the actions of a court to be attacked by prerogative writ. We reject that contention. ''[T]he phrase 'lack of jurisdiction' may 'be applied to a case where. though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no ''jurisdiction'' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites. . . .' '' (*City & County of San Francisco* v. *Superior Court,* 53 Cal.2d 236, 243 [1 Cal. Rptr. 158, 347 P.2d 294] ; see also *Crittenden* v. *Superior Court,* 61 Cal.2d 565 [39 Cal. Rptr. 380, 393 P.2d 692] ; *County of Los Angeles* v. *Superior Court,* 253 Cal.App.2d 670 [62 Cal.Rptr. 435].) In the case at bench the trial court by its minute order purports to take action and to give relief in a manner other than the only manner in which it is empowered to act.

There can be only one judgment upon the petition for writ of mandate and injunction as filed in the trial court—that of denial of the writ. While that petition alleges in conclusionary terms that the action of the city council in awarding the contract to Murphy was ''arbitrary, capricious, unreasonable, an abuse of discretion, contrary to the requirements of law, and was null and void,'' the only operative factual allegations of the petition are limited to those purporting to estab-

lish an abuse of discretion. Those allegations assert the proposition that: (1) the city council improperly rejected Harman as a bidder because he did not possess a general engineering contractor's license at the time of the bid although he had a general building contracting license; and (2) the council erroneously and by an improper procedure determined Harman was less qualified than Murphy.

█ Accepting for the purposes of discussion Harman's argument that the award of a public contract is that form of governmental action which is reviewable for abuse of discretion and not solely on the basis of a determination of an excess of legislative power, fraud, corruption, or bad faith we must test the validity of a purported allegation of abuse of discretion by the measure of a "clear and convincing showing." (*Siller* v. *Board of Supervisors,* 58 Cal.2d 479 [25 Cal. Rptr. 73, 375 P.2d 41].) Such a showing must be bottomed upon claim of something more than good faith mistake or of an administrative or legislative decision made contrary to one the court might have reached had it been acting as the executive or legislative branch of government. █ The petition filed with the trial court in the case at bench asserts at most that the council, in interpreting its invitation to bid, acted honestly but in a fashion different than a court might have acted if it had been letting the contract. █ The solicitation of bids, included as an exhibit to the petition in the trial court, states: "The award of the contract, if it be awarded, will be to the lowest qualified responsible bidder, whose proposal complies with all the requirements prescribed." The proposal requirements of the solicitation also state: "Before submitting bids, contractors shall be licensed in accordance with the provisions of Section 7000 through 7145 of the Business and Professions Code of the State of California." Business and Professions Code section 7055 provides: "For the purposes of classification, the contracting business includes any and all of the following branches: (a) General engineering contracting. (b) General building contracting. (c) Specialty contracting." Section 7056 defines a general engineering contractor as: "a contractor whose principal contracting business is in connection with fixed works requiring specialized engineering knowledge and skill, including the following divisions or subjects: . . . water supply . . . paving and surfacing work . . . in connection with above mentioned fixed works." Section 7057 defines a general building contractor as: "a contractor whose principal contracting business is in

connection with any structure built . . . for the support, shelter and enclosure of persons, animals, chattels, or movable property of any kind . . .''

The construction of the licensing requirement of the invitation to bid adopted by the council that bidders were required to possess not merely some form of contracting license but rather were, when the bid was submitted, required to have the form of license necessary to do the work described in the solicitation is not so unreasonable as to be subject to being overturned by a court.[2] ■ Neither is there a clear and convincing showing of an abuse of discretion by the council in its reliance upon a communication from the State Contractors License Board to the effect that Harman's license as a general building contractor did not empower him to do the work called for in the specifications. That communication is consistent with the definition of the scope of the license possessed by Harman when he bid the job as that definition is contained in Business and Professions Code section 7057.

### SPECIFICITY OF THE SOLICITATION TO BID

■ Harman argues that the licensing requirement in the solicitation of bids is illegally vague in that it refers to the licensing provisions of the Business and Professions Code in general and does not specify that a bidder must possess a general engineering contracting license. From that argument flows his contention that the council by insisting upon such a license was adding a condition not included in the original invitation thus voiding its award which bypassed Harman on the basis that he did not have the particular form of license. If the council had in fact disqualified Harman upon the basis of a condition not included within the solicitation of bids, his argument might have merit. (See *Baldwin-Lima-Hamilton Corp.* v. *Superior Court,* 208 Cal.App.2d 803 [25 Cal.Rptr. 798].) However, that was not the case. The reasonable construction of the requirement in the invitation to bid that bidders at the time of the submission of bids must be licensed as provided in Business and Professions Code "Section 7000 through 7145" is that the bidder must possess the type of license required to do the job. That interpretation is impelled by the classification of types of contracting licenses set out in section 7055, and the definitions of the activity authorized by

---

[2]It is reasonable to require in a solicitation for bids upon a public construction contract that bidders possess a license empowering performance at the time bids are submitted. This requirement assures the public agency that bids analyzed by it will be those of persons authorized to perform any contract awarded to them.

the various forms of license contained in sections 7056 through 7058. We note also that if Harman's counsel finds the statutory reference vague his client apparently did not because after submitting his bid he applied for the proper license. Unfortunately for Harman, that application was late since the qualifications for bidders required the proper license when bids were submitted.

### Conclusion

There is a substantial basis for the action of petitioners which the trial court has sought to restrain. While the council also purported to find that Harman was a "less qualified" bidder than Murphy, that finding was unnecessary to the action taken by it. For that reason we do not undertake to consider the intriguing but academic questions of Harman's right to be heard by the council before it made such a finding and the right of the council to select from among qualified bidders on the basis of degrees of qualification.

Let a peremptory writ of mandate issue requiring the Superior Court of Los Angeles County to annul its action granting the motion of Gene Harman, dba Harman-B. J. Gladd Construction Co., and De De Harman, real parties in interest, for writ of mandate and for injunctive relief in Los Angeles Superior Court case number 948094 and to make a new and different order denying that petition.

Wood, P. J., and Feinerman, J. pro tem.,* concurred.

A petition for a rehearing was denied June 6, 1969.

---

*Assigned by the Chairman of the Judicial Council.